UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISION, <br><br> Plaintiff, <br><br> v. <br><br> AUTOZONE, INC. AND AUTOZONERS, LLC, <br><br> Defendants. | No. 14 CV 3385 <br><br> Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff EEOC ("EEOC") filed this lawsuit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*, seeking relief for Gonzala Gomez, Gary Clay, and Herman Matasar ("Claimants") and any other individual who suffered from a qualified disability and was adversely affected by AutoZone's "no fault" attendance point policy. (Dkt. 18). This Court previously granted the EEOC's motion to quash document subpoenas that Defendants Autozone, Inc. and Autozoners, LLC (collectively, "AutoZone") intended to issue on three subsequent employers of Claimants. (Dkt. 71). After AutoZone sought relief from that order, the District Judge ordered AutoZone to file a motion for reconsideration so that this Court could rule in the first instance whether new developments warranted modification of this Court's prior order quashing the subpoenas to subsequent

employers. (Dkt. 90). For the reasons set forth below, Autozone's Motion for Relief from Order Quashing Subpoenas ("Motion") (Dkt. 91) is granted in part.

## I. BACKGROUND

On May 24, 2016, this Court quashed four subpoenas to three subsequent employers of the Claimants.[1] (Dkt. 64-1 at 5-9, 45-49, 85-94; Dkt. 71). On September 20 and 21, 2016, AutoZone deposed the Claimants. (Dkts. 92-2-4, Exhs. B-C). On October 19, 2016, AutoZone filed its Motion arguing that the deposition testimony revealed that EEOC's discovery responses regarding the Claimants' subsequent employment were incomplete and contained misrepresentations. (Dkt. 92 at 1). AutoZone requested relief from this Court's order and also requested to subpoena "all subsequent employment records for any other claimants in this litigation." (Dkt. 91 at 2; Dkt. 92 at 6). However, at oral argument on November 2, 2016, AutoZone represented that it was no longer seeking leave to subpoena all subsequent employment records for any other claimants in the case.[2]

The subpoenas that were the subject of the Court's prior order were to Advance Auto Parts, Daily Solutions, and Hot Rod Barn. (Dkt. 64-1 at 5-9, 45-49, 85-94). Gomez worked at Advance Auto Parts from November 20, 2010 to January 2011.[3] (Dkt. 92-1 at 5). Clay worked at Daily Solutions from 2010 to 2013. *Id*. at 4. Matasar

---

[1] Both Gomez and Matasar worked at Advance Auto Parts so there are four subpoenas but only three subsequent employers involved.
[2] AutoZone's reply brief continues to request leave to subpoena "all subsequent employment records for any other claimants in this litigation." (Dkt. 97 at 3). The court assumes this is an oversight. In any event, this request is denied as overly broad.
[3] EEOC's Interrogatory Response states that Gomez was terminated from Advance Auto Parts in January 2010 (Dkt. 92-1 at 5), but this appears to be a typo and should have stated "January 2011."

worked at Hot Rod Barn in 2011 or 2012 for 4-6 weeks and at Advance Auto Parts from January or February 2013 to August 2013. *Id.* at 5; Dkt. 92-4 at 9.

The EEOC maintains that the subpoenas should be quashed because the discovery sought through the subpoenas: (1) is duplicative of information already provided; (2) not relevant; and (3) would harm Claimants.

## II. DISCUSSION

### A. Applicable Law

District courts have broad discretion in supervising discovery and ruling on discovery motions. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 (7th Cir. 2012); *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992). A court considering a motion to quash a subpoena weighs the benefits of producing the information sought, the burdens of compliance, whether the information is available from another source, the relevance and scope of the requests, and the interests of the non-parties as well as the parties. *HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2015 U.S. Dist. LEXIS 126358, at *9-10 (N.D. Ill. Sep. 22, 2015); *Charvat v. Travel Servs.*, No. 12 CV 5746, 2015 U.S. Dist. LEXIS 472, at *4 (N.D. Ill. Jan. 5, 2015) (citations omitted); *Purzel Video GmbH v. Doe*, No. 13 C 0792, 2013 U.S. Dist. LEXIS 179738, at *27 (N.D. Ill. Dec. 19, 2013) (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004)); *Salas v. 3M Co.*, No. 08 C 1614, 2008 U.S. Dist. LEXIS 124993, at *2 (N.D. Ill. Aug. 28, 2008).

Under Federal Rule of Civil Procedure 45, the scope of discovery that a party may seek in a subpoena is as broad as the rules of discovery allow. *EEOC v. Rexnord Indus., LLC*, No. 11-CV-777, 2012 U.S. Dist. LEXIS 91006, at *15 (E.D. Wis. June 29, 2012). A subpoena may request information about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). The party opposing discovery has the burden to show why the discovery is not proper. *HTG Capital Partners, LLC*, 2015 U.S. Dist. LEXIS 126358, at *9 (citation and quotations omitted).

**B. AutoZone Can Subpoena Wage and Benefits Information**

The EEOC argues that wage and benefits information sought in the subpoenas is duplicative of information AutoZone sought from the EEOC. (Dkt. 77 at 2).

AutoZone's second set of document requests seeks all documents reflecting "any and all employment, including work as an independent contractor or under self-employment status, for which [Claimants] have applied or have been offered since their employment separation with AutoZone" (Dkt. 72-2 at 7). The EEOC objected to the request as overly broad, unduly burdensome, and not relevant but agreed to produce W-2 and 1099 forms or other documents sufficient to reflect all income earned by each Claimant "as well as documents that reflect the Aggrieved Individual's efforts to obtain employment during that period of time." (Dkt. 72-1 at 3-4). The EEOC produced the W-2 and 1099 records within Claimants' possession and requested transcripts from the IRS of earned income reported for each Claimant subsequent to their discharge from AutoZone (Dkt. 77 at 2). The EEOC

produced some information, but AutoZone still does not have complete wage information. (Dkt. 92 at 3). At the November 2, 2016 hearing, the EEOC argued that an employer is not likely to have a W-2 if the IRS does not have it; however, the employer likely would have payroll and benefit records.

It is undisputed that these records are relevant and AutoZone limited the subpoenas to the time period during which the EEOC is seeking backpay for the Claimants (Dkt. 72-1 at 2).[4] And since the EEOC has not been able to produce complete records, the information sought is not duplicative.

The EEOC, relying on a number of cases from this district, argues that the subpoenas are harassing because they alert subsequent employers that Claimants are involved in litigation against a former employer, which could interfere with Claimants' future chances of employment or obtaining a reference. (Dkt. 64 at 1, 7-9; Dkt. 96 at 2-3). The Court is not unsympathetic to this argument. However, the Court finds these subpoenas more narrow because they are only being served on *former* subsequent employers, not current employers. (Dkt. 64 at 9; Dkt. 72-1 at 4). *See EEOC v. United Road Towing, Inc.*, No. 10-CV-6259 (July 19, 2011) (quashing subpoena to current employer) (Dkt. 64-3, Exh. 3); *EEOC v. Pepsi*, No. 03-CV-6576 (September 17, 2004) (same) (Dkt. 64-6, Exh. 6).

In *EEOC v. Caterpillar*, No. 03-CV-5363 (February 18, 2005) (Dkt. 64-5, Exh. 5), the Court quashed the subpoena to a former subsequent employer because it would

---

[4] The time period corresponds to the period during which EEOC seeks backpay for each Claimant. For Gomez, it is the date of her termination from AutoZone through December 2011; for Clay, the date of his termination through the present; and Matasar, the date of his termination through January 2013 (Dkt. 92-1 at 4-5).

be harassing and because all of the relevant information was available from EEOC or the individual plaintiff. In *EEOC v. Jewel Food Stores Inc.*, No. 04-CV-8139 (April 14, 2005) (Dkt. 64-4, Exh. 4), the Court quashed a subpoena to a former subsequent employer but suggested that if the Court was presented with a more narrow subpoena and a good reason for subpoenaing the subsequent employer, the Court might consider it. Here, there is good reason for subpoenaing these particular records because the EEOC has not made the complete compensation information available to AutoZone and the records are directly relevant to AutoZone's mitigation defense. Additionally, Gomez and Matasar worked at the employers only for brief periods, all of Claimants' positions ended at least three years ago, and all of the Claimants have since obtained other jobs or, in the case of Gomez, left the country. (Dkt. 92-1 at 5). Therefore, the potential harm to Claimants, if any, is minimal.[5]

Accordingly, the Court grants AutoZone's Motion in part to allow AutoZone to subpoena payroll and benefits records from Advance Auto Parts, Daily Solutions, and Hot Rod Barn.

---

[5] As discussed, this Court understood AutoZone to be seeking only to subpoena the three subsequent employers. To the extent AutoZone seeks to subpoena additional employers, the request is denied, including as to the two employers revealed at the depositions. The potential harm to Clay and Matasar outweighs any benefit of subpoenaing Napa Auto Parts or Mike's Pizza. *See* Salas, 2008 U.S. Dist. LEXIS 124993, at *4 ("Due to the direct negative effect that disclosures of disputes with previous employers can have on an employee and their current employment, subpoenas in these circumstances should be used, if at all, as a last resort."). As of the date of the deposition, Clay was currently employed at Mike's Pizza. (Dkt. 92-3 at 7). Matasar worked at Napa Auto Parts from September 2013 to July 2016 (Dkt. 92-4 at 9), ending his employment there relatively recently which increases the chances he may rely on Napa Auto Parts as a reference. Moreover, Matasar is seeking backpay through January 2013, so only approximately four months of the employment at Napa Auto Parts would be relevant to AutoZone's mitigation defense. Nevertheless, EEOC is ordered to produce records, to the extent they have not yet been produced, responsive to AutoZone's document requests with respect to Clay's employment at Mike's Pizza and Matasar's employment at Napa Auto Parts that are in Claimants' possession.

**C. AutoZone Can Subpoena Records Related to End of Employment**

AutoZone can also subpoena from the employers records related to the reasons the Claimant's employment ended because the Claimants' deposition testimony was inconsistent with the EEOC's written discovery responses on this point. Gomez's interrogatory answer stated that she was "terminated from Advance due to absences related to her disability"; she testified at her deposition that she voluntarily quit the Advanced Auto Parts job because she was sick (Dkt. 92-1 at 5; Dkt. 92-2 at 6). Clay's interrogatory answer stated that the Daily Solutions job "ended in 2013"; he testified that he was fired from Daily Solutions for missing too much work due to complications with methadone (Dkt. 92-3 at 4). Matasar admitted to lying to Hot Rod Barn by omitting AutoZone on his employment application and stated that he could not remember if he lied to other employers (Dkt. 92-4 at 4-10), which, AutoZone argues, shows that there may be records showing that he was fired from subsequent employers for lying (Dkt. 92 at 6). Thus AutoZone argues that discovering the "true reason" Claimants' subsequent employment ended is necessary to its failure to mitigate defense (Dkt. 97 at 2).

The parties dispute the relevance of the reason why the Claimants' employment ended (Dkts. 96 and 97). But the circumstances surrounding Claimants' termination or voluntarily quitting could impact the mitigation of damages argument.

An employee who proves employment discrimination is entitled to back pay. *Smith v. Farmstand*, No. 11-cv-9147, 2016 U.S. Dist. LEXIS 122062, at *33-34 (N.D.

Page **7** of **13**

*EEOC v. Autozone*, 14 C 3385

Ill. Sep. 9, 2016). The plaintiff has the burden to establish the amount of back pay. But if plaintiff failed to mitigate her damages, the back pay award may be reduced by "[i]nterim earnings or amounts earnable with reasonable diligence." 42 U.S.C. § 2000e-5(g)(1). The burden shifts to the defendant to show that the plaintiff failed to mitigate or that damages were less than plaintiff claimed. *Smith,* 2016 U.S. Dist. LEXIS 122062, at *33-34 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003) and *Hutchison v. Amateur Elec. Supply*, 42 F.3d 1037, 1044 (7th Cir. 1994)).

The case law shows the relevance of the reason for and circumstances surrounding the termination from subsequent employment. In *Dreger v. Mid-Am. Club*, 95 C 4490, 1998 U.S. Dist. LEXIS 2536, at *8-9 (N.D. Ill. Feb. 23, 1998), cited by the EEOC, the court described the general rule that "when a plaintiff acts imprudently and quits or causes himself to be fired due to his own misconduct, the court will exclude from any claim for back pay the amount that the plaintiff would have earned had he not acted imprudently." *See also Molino v. Bast Servs.*, No. 08 C 4399, 2011 U.S. Dist. LEXIS 23242, at *9 (N.D. Ill. Mar. 7, 2011) (stressing that it was defendant's "burden to prove that [plaintiff] left those positions under circumstances that would suggest [she] had failed to mitigate her damages.") (citing *United States v. City of Chi.*, 853 F.2d 572, 579 (7th Cir. 1988)); *Rounds v. Atchinson, Topeka & Santa Fe Ry. Co.,* No. 80 C 2829, 1982 U.S. Dist. LEXIS 17253, at *5 (N.D. Ill. Dec. 23, 1982) ("[A] dismissal for cause can be treated as a voluntary relinquishment of employment, when it is the result of the plaintiff's avoidable

actions."); *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (affirming district court's decision not to toll backpay where plaintiff was fired from subsequent employer for cause due to an accident but defendant failed to establish that plaintiff acted intentionally, willfully or committed a gross or egregious wrong).

In *Smith v. Farmstand,* defendants argued that plaintiff's award should be reduced because he voluntarily quit or abandoned several jobs. 2016 U.S. Dist. LEXIS 122062, at *66. The Court evaluated plaintiff's reason for quitting the job and determined that while there were circumstances where a car failure "would not justify quitting a job for mitigation purposes", plaintiff's reason for quitting "does not conflict with his duty to mitigate his damages." *Id.* at 67. In *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2012 U.S. Dist. LEXIS 81082 (N.D. Ill. June 7, 2012), plaintiff was terminated from the retail store, Van Maur, and then voluntarily resigned after two months from a new position. She testified that she left because she did not have the hours she expected to have and because of gasoline prices, but also admitted that the new job was only two miles from the previous job. The Court declined to overturn the jury's decision that plaintiff should not be compensated with back pay "after she voluntarily resigned after only two months from a replacement job in a similar industry and a similar location." *Id.* at *19.

In light of the inconsistencies in the deposition testimony and the relevance of this information, AutoZone has shown that the subsequent employers may have relevant information that the EEOC has failed to disclose to AutoZone. Therefore,

the Court will allow AutoZone to subpoena end of employment records from Advance Auto Parts, Daily Solutions, and Hot Rod Barn.

**D. Other Records Requested in the Subpoenas**

Although the Court will allow AutoZone to subpoena the records discussed above, the Court will not reconsider its grant of the motion to quash with regard to the remaining records.[6] AutoZone points out that in *Alderson v. Ferrellgas, Inc.,* No. 3:12-cv-305-TLS-CAN, 2013 U.S. Dist. LEXIS 190674 at *18-19 (N.D. Ind. Aug. 22, 2013) (Dkt. 97 at 3), the Court found that when defendant demonstrated that plaintiff did not provide her complete job search history, that "suggest[ed] to the Court that other sources, such as the three employers, could provide the requested information but also that Plaintiff may be hiding something." This Court does not agree with the breadth of this approach or that incomplete discovery responses automatically open a plaintiff's entire employment file from a third party employer to discovery.

Instead, this Court agrees with the approach of other courts, requiring the party seeking to subpoena third party employment records to demonstrate good reason for seeking the particular documents and the relevance of those documents to the claims and defenses in the case. *See Woods v. Fresenius Med. Care Grp. of N. Am.,*

---

[6] The subpoenas seek: "requirements of position(s) applied for; employment application; resume(s) with cover letter; documentation of reference checks; notes or records regarding interviews; records pertaining to the payment and/or reimbursement of travel expenses; personnel files; documents referring to or describing any and all benefits, including, but not limited, health insurance or any other type of insurance; payroll records; disciplinary records; performance evaluations; medical records; and investigative files or notes." (Dkt. 64-1 at 5-9, 45-49, 85-94). The Court already permitted discovery of certain medical records (Dkt. 71). AutoZone has not argued that the medical records that have been produced are incomplete or that additional medical records are needed from the subsequent employers.

No. 1:06-cv-1804-RLY-WTL, 2008 U.S. Dist. LEXIS 3756, at *3-5 (S.D. Ind. Jan. 16, 2008) ("Plaintiff has not placed her entire employment history at issue…Defendant must demonstrate that the documents it seeks actually are relevant to the claims and defenses in this case."); *Jones v. Jackson State Univ.*, No. 07-MC-1029, 2007 U.S. Dist. LEXIS 62133, at *7 (C.D. Ill. Aug. 23, 2007) (declining to allow subpoena of defendant's entire personnel file and employment records and instead limiting scope of subpoena to documents specific to sexual harassment complaints against defendant); *see also EEOC v. Jewel Food Stores Inc.*, No. 04-CV-8139 (April 14, 2005) (quashing subpoena to former subsequent employer and noting that if the Court were presented with a more narrow subpoena, "I would have to see what your reasons are and what you are looking for."). Even in *Alderson,* the Court noted that defendant did *not* seek plaintiff's entire personnel files. *Alderson,* 2013 U.S. Dist. LEXIS 190674 at *17.

AutoZone argues that it needs employment applications to "discover information provided in applications to subsequent employers which may reveal additional interim employment not previously identified and/or misrepresentations about their reasons for leaving AutoZone." (Dkt 97 at 2). The Court is not persuaded. AutoZone was able to depose Claimants about their employment history and whether they misrepresented their reasons for leaving AutoZone. Indeed, Matasar admitted to lying on an employment application about his position with and termination from AutoZone. Matasar is, however, the only Claimant who admitted to lying in an employment application. To the extent that AutoZone asks this Court to impute

Matasar's dishonesty to the other Claimants, the Court declines to do so. *See Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2009 U.S. Dist. LEXIS 94693, at *15 (N.D. Ill. Oct. 8, 2009) ("Yellow has not offered any basis for imputing dishonesty from one plaintiff to another.").

AutoZone also argues that it needs to "determine the attendance history at subsequent employers and whether any absences were attributed to alleged disabilities." (Dkt. 97 at 2). But AutoZone has not articulated the relevance of such records to its defenses. The same applies to the disciplinary records, performance evaluations, and other interview and investigative files or notes sought by AutoZone. *See Rexnord Indus., LLC*, 2012 U.S. Dist. LEXIS 91006, at *23 ("while disciplinary records at [defendant] would tend to show whether [plaintiff] was a qualified individual, it is unclear how these records from subsequent employers would show [plaintiff] was a qualified individual.").

Thus the inconsistencies and misrepresentations raised by AutoZone do not mean that Claimants have lost all rights to privacy and to be free from potential harm. *See Salas*, 2008 U.S. Dist. LEXIS 124993, at *3-4 ("Especially in employment discrimination cases, if filing such cases opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become an instrument for delay or oppression.") (internal citations and quotations omitted). The Court is not convinced of the relevance of these records to AutoZone's defenses, and what relevance they have, if any, does not outweigh the potential burdens on the third party employers and the Claimants.

Page **12** of **13**

*EEOC v. Autozone*, 14 C 3385

## III. CONCLUSION

For the reasons discussed above, Defendants' Motion for Relief from Order to Quash Subpoenas [91] is **GRANTED IN PART**. Autozone's subpoenas must be modified to request the following records from Advance Auto Parts (for Gomez and Matasar), Hot Rod Barn (Matasar), and Daily Solutions (Clay): (1) payroll records; (2) documents describing any benefits; and (3) documents relating to the reason the Claimant left or was terminated. As discussed, EEOC is ordered to produce records, to the extent they have not yet been produced, responsive to AutoZone's document requests with respect to Clay's employment at Mike's Pizza and Matasar's employment at Napa Auto Parts that are in Claimants' possession.

E N T E R:

Dated: December 14, 2016

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge