IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Plaintiff,

       v.

AUTOZONE, INC., and
AUTOZONERS, LLC,

       Defendants.

Civil Action No. 14-cv-3385

Judge Dow

PLAINTIFF EEOC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iv

EEOC'S REPLY ............................................................................................................ 1

I.  Because AutoZone Failed to Comply with LR 56.1, EEOC's Facts Should Be Deemed Admitted, EEOC's Motion Granted, And AutoZone's Motion Denied .................................. 3

    A.  AutoZone Violated LR 56.1 By Failing to Submit a Statement of Additional Facts and By Using Its Responses to EEOC's Facts as a Vehicle for Argument ..................4

II.  The Undisputed Facts Are Sufficient to Grant Partial Summary Judgment to EEOC ............. 6

    A.  Because AutoZone Did Not Respond to EEOC's Motion That Each Claimant Has a Covered Disability, There is No Issue for Trial On This Prong of the ADA Analysis .6

    B.  Strict Adherence to a Regularly Disregarded Attendance Points Policy is Not an Essential Functions of the Job ............................................................................7

        1.  The Essential Functions of the Job, Including Attendance, Must Be Examined By Looking at the Facts ................................................................................ 7

        2.  The Operation of AutoZone's Workplace ............................................................ 8

            a.  AutoZone Admits That Medical or Disability Related Absences Did Not Provide a Basis for Termination Under the Company's Points Policy ............ 9

            b.  Satisfying AutoZone's Twelve-Point Attendance Policy Was Not Required For A Significant Number of Other Employees ........................................... 10

                i.  AutoZone Cites No Record Evidence To Dispute EEOC's Attendance Analysis ................................................................................. 10

                ii.  AutoZone's Attempt to Use *Daubert* to Exclude EEOC's Expert Fails .. 12

    C.  AutoZone's Admissions Show There is No Dispute of Fact that Each Claimant Is A Qualified Individual as Defined by the ADA ............................................................16

        1.  Gary Clay ........................................................................................... 18

        2.  Gonzala Gomez ................................................................................. 20

        3.  Kyle Jackson .................................................................................... 22

4.      Jerald Lindsey ................................................................................. 26

5.      Julio Lozada ..................................................................................... 31

6.      Herman Matasar ............................................................................... 32

7.      Sean Robbins .................................................................................... 34

8.      Adrian Viguera.................................................................................. 36

D.  AutoZone Cites No Caselaw that Negates the Qualification of the Claimants ...........38

III. Other Issues Do Not Create Jury Question on Whether the Claimants Are Qualified ........... 44

IV. CONCLUSION.................................................................................................... 48

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abudayyeh v. Envoy Air*,
    No. 19 C 5802, 2020 U.S. Dist. LEXIS 180571 (N.D. Ill. Sep. 30, 2020) .............................17

*Ammons v. Aramark Unif. Servs., Inc.*,
    368 F.3d 809 (7th Cir. 2004) ........................................................................................11

*Archer-Daniels Midland Co. V. Phoenix Assur. Co.*,
    936 F. Supp. 534 (S.D. Ill. 1996)..................................................................................6

*Bordelon v. Chicago Sch. Reform Bd. of Trustees*,
    233 F.3d 524 (7th Cir. 2000) ........................................................................................3

*Bostock v. Clayton Cty.*,
    Georgia, 140 S. Ct. 1731 (2020) ..................................................................................17

*Bultemeyer v. Fort Wayne Community Sch.*,
    100 F. 3d 1281 (7th Cir. 1996) ...............................................................................29, 30

*Byrne v. Avon Products, Inc.*,
    328 F.3d 379, 381 (7th Cir. 2003) .............................................................................19

*Carmona v. Sw. Airlines Co.*,
    604 F.3d 848 (5th Cir. 2010) ..........................................................................7, 15, 42

*Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*,
    674 F.3d 630 (7th Cir. 2012) ........................................................................................47

*Credeur v. Louisiana*,
    860 F. 3d 786 (5th Cir 2017) ........................................................................................43

*De v. City of Chicago*,
    912 F. Supp. 2d 709 (N.D. Il 2012) .............................................................................3

*EEOC v. Austral USA, LLC*
    447 F. Supp. 3d 1252 (S.D. Ala. 2020)..................................................................41, 42

*EEOC v. Midwest Gaming & Entm't, LLC*,
    No. 17 C 6811, 2018 WL 2392014 (N.D. Ill. May 25, 2018) ...................................7

*EEOC v. PML Servs. LLC*,
    No. 18-CV-805-BBC, 2020 WL 3574748 (W.D. Wis. July 1, 2020) ...............9, 11

*Evans v. Coop. Response Ctr., Inc.*,
    No. CV 18-302...............................................................................................................41

*ExxonMobil Oil Corp. v. Amex Const. Co.*,
    702 F. Supp. 2d 942 (N.D. Ill. 2010) ...............................................................11, 14

*Fogle v. Ispat Inland, Inc.*,
    32 Fed Appx. 155 (7th Cir. 2002) ...............................................................39

*Gogos v. AMS Mechanical Systems*,
    737 F. 3d (7th Cir. 2013) ...............................................................26

*Golden v. Indianapolis Hous. Agency*,
    698 F. App'x 835 (7th Cir. 2017) ...............................................................19

*Guzman v. Brown Cty.*,
    884 F.3d 633 (7th Cir. 2018) ...............................................................41

*Haschmann v. Time Warner*,
    151 F.3d 591, 602 (7th Cir. 1998) ...............................................................19

*Hooper v. Proctor Health Care Inc.*,
    804 F. 3d 846 (7th Cir. 2015) ...............................................................29

*Hoosier v. Greenwood Hospitality Mgmt. LLC*,
    32 F. Supp. 3d 966 (N.D. Ill. 2014) ...............................................................5

*Hostettler v. Coll. of Wooster*,
    895 F.3d 844 (6th Cir. 2018) ...............................................................7, 16, 43, 44

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund.*,
    778 F.3d 593 (7th Cir. 2015) ...............................................................6

*Hunt-Watts v. Nassau Health Care Corp.*
    43 F. Supp. 3d 119. (E.D.N.Y. 2014) ...............................................................13, 14

*Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*,
    201 F.3d 894 (7th Cir. 2000) ...............................................................8, 19, 20

*Kazmierski v. Bonafide Safe & Lock, Inc.*,
    223 F. Supp. 3d 838 (E.D. Wis. 2016) ...............................................................40, 41

*Luster v. Illinois Dep't of Corr.*,
    652 F.3d 726 (7th Cir. 2011) ...............................................................36

*Malas v. Hinsdale Twp. Disrict #86*,
    No. 15-CV-10490, 2019 WL 2743590 (N.D. Ill. July 1, 2019)...............................2, 24

*Matland v. Loyola Univ. of Chicago*,
    12 C 5165, 2013 WL 5818884 (N.D. Ill. Oct. 28, 2013)...............................32

*McMillan v. Potter*,
No. 06CV2121, 2010 WL 1791268 (N.D. Ill. May 5, 2010)...................................17

*Miller v. Ameritech Corp.*,
No. 02 C 2286, 2005 WL 2266614 (N.D. Ill. Sept. 14, 2005), aff'd, 214 F.
App'x 605 (7th Cir. 2007) ......................................................................4

*Miller v. Illinois Dep't of Transp.*,
643 F.3d 190 (7th Cir. 2011) ..........................................................7, 12, 14

*Mlsna v. Union Pac. R.R. Co.*,
No. 19-2780, 2020 WL 5511988 (7th Cir. Sept. 14, 2020) ......................................2

*Murray v. AT&T Mobility*,
LLC 374 Fed. Appx. 667 (7th Cir 2010) ....................................................38

*Perez v. Bd. of Educ. of the City of Chicago*,
576 F. App'x 615 (7th Cir. 2014) ...........................................................5

*Preddie v. Bartholomew Consolidated School Corp.*,
799 F.3d 806 (7th Cir. 2015) ...........................................................19, 40

*Rowlands v. United Parcel Serv. - Fort Wayne*,
901 F.3d 792 (7th Cir. 2018) ...............................................................46

*Severson v. Heartland Woodcraft, Inc.*,
872 F.3d 476, 481 (7th Cir. 2017) ..........................................................19

*Smith v. Cook Cty.*,
No. 17 C 7609, 2019 WL 1515007 (N.D. Ill. Apr. 8, 2019)....................................39

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) .........................................................12, 39, 40

*Stollings v. Ryobi Techs., Inc.*,
725 F.3d 753 (7th Cir. 2013) ...........................................................12, 14

*Tiller v. Immke*,
2007 U.S. Dist. LEXIS 31136 ................................................................13

*To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*,
152 F.3d 658 (7th Cir. 1998) ...............................................................46

*Whitaker v. Wisconsin Dept. of Health Serv.*,
84F. 3d 681, 684 (7th Cir. 2017) ...........................................................38

*Willard v. Mhm. Crr. Sers.*,
2015 U.S. Dist. LEXIS 154467 (D. Mass. Nov. 16, 2015)...................................13, 14

**Statutes**

ADA ................................................................................................................ *passim*

FMLA ..................................................................................................38, 39, 41, 42

**Other Authorities**

29 C.F.R. §1630.2(m) ...............................................................................................16

29 C.F.R. § 1630.2(n)(3)..............................................................................................7

29 C.F.R. § 1630.2(p)(2)(v) .......................................................................................47

Fed. R. Civ. P. 56........................................................................................................2

Fed. R. Evid. 702

Fed. R. Evid. 801(d)(B) .............................................................................................25

Fed. R. Evid. 803(4)...................................................................................................28

Fed. R. Evid. 803(8)..............................................................................................25, 26

LR 56.1 ............................................................................................................. *passim*

LR 56.1(b)(3) .............................................................................................................5

Seventh Circuit Pattern Jury Instructions, No. 4.03....................................................47

**EEOC'S REPLY**

EEOC seeks relief for eight former employees of Defendants AutoZone, Inc. and AutoZoners LLC ("AutoZone"). EEOC asserts that each was terminated in violation of the ADA when AutoZone failed "to make exceptions to a 'no fault' attendance policy for their disability-related absences, and discharged them as a result…." (EEOC's Amended Complaint, Doc. #134, p.1.)  The claimants were denied a "reasonable number of disability related absences" and each claimant "would not have been discharged, but for absences that were inextricably linked to their disabilities…." (*Id.* at pp. 5-6.)

The only issue before the court is whether, on the specific facts of this case, an employee with a disability is rendered unqualified for his job by application of AutoZone's attendance policy that, as written, requires near perfect attendance even though AutoZone itself undisputedly and regularly fails to adhere to its own attendance policy. The answer is no.  Thus, the only issues of legitimate factual dispute to go forward to a jury are the issues of notice and undue burden.

AutoZone admits:

i)      Each claimant had a disability;

ii)     That pursuant to its policy AutoZone could excuse absences resulting from a documented medical appointment or disability, meaning absences resulting from a documented disability should not result in any points toward termination being charged to an employee;

iii)    That approximately 24% of AutoZone employees who reached twelve attendance points were allowed to continue working for at least 28 days after reaching that

1

threshold, and that many of these 293 employees continued working for months or were never terminated after reaching twelve points; and

iv)     That many of the 293 employees not only continued working at AutoZone, but also continued to accumulate attendance points well beyond the number of points the claimants in this case had at the time of their termination.

These admissions establish that each of the claimants was a qualified individual with a disability who could have satisfied AutoZone's attendance requirements if AutoZone had not terminated them for disability related absences.

Left for the jury is whether AutoZone had notice of each claimant's disability and knew or should have known that each claimant was accruing points due to absences resulting from their disabilities. *Mlsna v. Union Pac. R.R. Co.,* No. 19-2780, 2020 WL 5511988, at *3 (7th Cir. Sept. 14, 2020) ("To succeed on a reasonable accommodation claim, a plaintiff must show (1) he was disabled, (2) his employer was aware of his disability, and (3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position"). While EEOC agrees there is factual dispute over what notice was given to AutoZone, AutoZone put forth no evidence of their managers having requested medical documentation or clarification from the claimants and the claimants refusing to cooperate. *Malas v. Hinsdale Twp. Disrict #86*, No. 15-CV-10490, 2019 WL 2743590, at *21 (N.D. Ill. July 1, 2019) (An employer is obligated to let an employee know what information it wants).

The factfinder will also decide the amount of backpay owed to each claimant as well, as the individual retaliation claim of Gomez and the individual failure to accommodate claims -- independent of termination issues -- of Clay and Gomez.    Under Fed. R. Civ. P. 56, putting any other issues to the factfinder means ignoring the facts AutoZone concedes are undisputed.

I.      **Because AutoZone Failed to Comply with LR 56.1, EEOC's Facts Should Be Deemed Admitted, EEOC's Motion Granted, And AutoZone's Motion Denied**

In opposing EEOC's motion for summary judgment and in submitting its reply in support of its affirmative motion, AutoZone must comply with the local rules. AutoZone did not.

Because AutoZone's violations are pervasive, there is no need for this Court to consider which facts in particular should be deemed admitted or which legal arguments are not supported. Rather, the entirety of AutoZone's responses should be stricken, EEOC's summary judgment motion granted, and AutoZone's motion denied. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528–29 (7th Cir. 2000) ("We think, however, that the purpose of Local Rules 12(M) and (N)—to require the parties to identify the disputed issues in a concise format— would be defeated if the court were required to wade through improper denials and legal argument in search of a genuinely disputed fact. Under these circumstances, we find no abuse of discretion in the district court's decision to strike Bordelon's statement in its entirety.")

Courts in this circuit have held repeatedly that "[a] district court has broad discretion to require strict compliance with Local Rule 56.1." *De v. City of Chicago*, 912 F. Supp. 2d 709, 711-716 (N.D. Il 2012) (quoting *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 382 n. 2 (7th Cir.2008); *see also Cracco,* 559 F.3d at 632 (noting the "important function local rules like Rule 56.1 serve in organizing the evidence.") This Court has admonished litigants, stating the "[f]ailure to abide by the Local Rules may result in the [c]ourt striking briefs, disregarding statements of fact, deeming statements of fact admitted, or denying summary judgment." (Website of Judge Robert M. Dow Jr., "Summary Judgment – Local Rule

56.1 Submissions, https://www.ilnd.uscourts.gov/judge-info.aspx?YcR9etkCy90=, last visited

September 17, 2020.)


### A. AutoZone Violated LR 56.1 By Failing to Submit a Statement of Additional Facts and By Using Its Responses to EEOC's Facts as a Vehicle for Argument

AutoZone's responses do not comply with LR 56.1. AutoZone failed to submit a Statement of

Additional Facts, though its brief in response and reply, as well as its responses to EEOC's facts,

include new citations to discovery materials (as well as argument). EEOC does not assert that all

of AutoZone's citations are inaccurate or only partially complete, or that EEOC would dispute

them had they been presented in the mandated format. EEOC also does not agree that they are

all accurate or a full presentation of the evidence or undisputed. By failing to comply with LR

56.1, AutoZone shrouds the facts with a veil of confusion and argument. There is no reason to

accept AutoZone's responses or to give AutoZone a "do-over." *Miller v. Ameritech Corp.*, No.

02 C 2286, 2005 WL 2266614, at *1 (N.D. Ill. Sept. 14, 2005), aff'd, 214 F. App'x 605 (7th Cir.

2007).


AutoZone's Brief: AutoZone's brief cites directly to discovery materials – leaving much

of its argument without any citation to any facts presented as part of a Statement of Facts. *See*

Exhibit A, Statement in AutoZone's Brief Without any Citation to the Statement of Fact.


AutoZone's New Declarations: AutoZone submitted as exhibits to its brief three new

declarations that contain three identical paragraphs, one from each of the Regional Human

Resources Managers (RHRMs) for the regions at issue. *See* Doc. #290, PageID#6108-9, brief p.

7-8 (citing Exhibits A-C). The declarations attempt to place a limit on the number of absences

AutoZone would excuse for medical or disability reasons under its forgiveness policy, and

4

describe AutoZone's process if an employee needed "an infinite number of absences/tardies excused." *Id*. This limitation is not found in the policy, nor is it the accommodation that EEOC's claimants required. Accordingly, these declarations are not relevant. But this Court need not reach this question. *See Hoosier v. Greenwood Hospitality Mgmt. LLC,* 32 F. Supp. 3d 966, 971 (N.D. Ill. 2014) (refusing to consider six new declarations where the non-movant filed a memorandum of law and responded to the movant's statement of fact but did not file a statement of additional facts in violation of LR 56.1(b)(3)).

        <u>AutoZone's Responses to EEOC's Statements of Fact</u>:  AutoZone's Response fails to meet the requirements of LR 56.1.  In response to both EEOC's Statement of Undisputed Material Facts and EEOC Statement of Additional Facts (Docket Nos. 292& 293) instead of concise responses with specific references to the record, AutoZone submitted responses that included additional facts but no Statement of Additional Facts, and were often argumentative or merely commentary.  None of this is permitted by LR 56.1. *See, e.g., Perez v. Bd. of Educ. of the City of Chicago*, 576 F. App'x 615, 616 (7th Cir. 2014) (affirming the district court's decision to strike responses to facts and additional facts where they contained "unsupported assertions, conclusory arguments, and irrelevant declarations."). The failure to comply is significant enough that AutoZone's responses to EEOC's undisputed facts could be considered a second brief, doing all but citing legal precedent. *See* Exhibit B, AutoZone's Responses to EEOC's Fact Violate LR 56.1.  All of the facts identified in Exhibit B chart should be deemed admitted. Taken together, they provide sufficient reason to simply reject AutoZone's opposition to EEOC's motion, without further individualized analysis.

## II.     The Undisputed Facts Are Sufficient to Grant Partial Summary Judgment to EEOC

AutoZone does not substantively dispute the facts that support EEOC's motion for partial summary judgment.  This Court should grant partial summary judgment where it is able to establish facts without substantial controversy before trial. *Archer-Daniels Midland Co. V. Phoenix Assur. Co*., 936 F. Supp. 534, 536 (S.D. Ill. 1996) (quoting *ODC Communications Corp. V. Wenruth Invs.*, 826 F.2d 509, 515 (7th Cir. 1987). Partial summary judgement serves the role of a "useful brush-clearing function even if it does not obviate the need for a trial...and it may also facilitate the resolution of the remainder of the case through settlement." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*., 778 F.3d 593, 606 (7th Cir. 2015).

### A.  Because AutoZone Did Not Respond to EEOC's Motion That Each Claimant Has a Covered Disability, There is No Issue for Trial On This Prong of the ADA Analysis

The EEOC moved for partial summary judgment that each claimant has a disability under the ADA. (Doc. #280, § II.) AutoZone waived this issue, as its *Combined Response and Reply Brief* contains <u>no</u> response to this section of the EEOC's motion.  AutoZone states, "[s]olely for purpose of responding to the EEOC's Motion, <u>AutoZone will assume that each claimant has a medical condition that might qualify as a disability recognized by the ADA</u>." (Doc. #290, PageID#6104, brief p. 3, n. 3 (emphasis added).)   Having elected to make no argument at all in response to EEOC's motion, AutoZone does not get a second chance at trial on this issue.

That AutoZone makes arguments to the contrary in its responses to EEOC's facts and disputes some of EEOC's facts about the physical condition of the claimants does not matter. Indeed, it is just an illustration of AutoZone's consistent violation of LR 56.1. AutoZone's opportunity to respond has passed.

**B. Strict Adherence to a Regularly Disregarded Attendance Points Policy is Not an Essential Functions of the Job**

The undisputed facts establish that AutoZone's attendance points policy did not prevent EEOC's claimants from fulfilling the essential functions of their jobs. AutoZone maintained a written attendance points policy that purportedly required termination when an employee reached twelve points worth of absences or tardies ("occurrences"). But it is undisputed that AutoZone's written policy differed from what AutoZone actually required. As another district court in this circuit recently explained, "a plaintiff's absences" must be considered "in relation to his duties." *EEOC v. Midwest Gaming & Entm't, LLC*, No. 17 C 6811, 2018 WL 2392014, at *3 (N.D. Ill. May 25, 2018) (denying an employer's motion to dismiss where EEOC alleged the employer violated the ADA by terminating an employee who required extended leave).

**1. The Essential Functions of the Job, Including Attendance, Must Be Examined By Looking at the Facts**

Determining whether a function is essential requires looking at the employer's actual practices. *See* 29 C.F.R. § 1630.2(n)(3) (including as factors for consideration "(vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs"); *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011) ("[u]nder factors (vi) and (vii), we also look to evidence of the employer's actual practices in the workplace."); *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018) ("[a]lthough the employer's judgment receives some weight in this analysis . . . it is not the end-all— *especially* when an employee puts forth competing evidence.") (citations omitted); *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 860–61 (5th Cir. 2010) ("Carmona introduced evidence that

other flight attendants who had also exceeded twelve points were not discharged. . .. Therefore, even if the jury concluded that Carmona had violated Southwest's written attendance policy, it could have reasonably found that he was nevertheless qualified for his job under the unwritten policy that was actually in effect").

The Seventh Circuit, too, has explained that this analysis is applicable in attendance cases. "We need not go so far as to say that regular attendance is an essential function of every job ... nor do we hold that an individual with erratic attendance can never be a qualified individual with a disability under the ADA." *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000) (emphasis omitted)). Though the employee in *Jovanovic* did not prevail, the court relied on evidence submitted by the employer which compared the employee's absentee rate to other employees at the same facility. *Id.* (noting that the 1991 absentee rate at the plant was 1.31% as compared to Jovanovic's rate of 3.35% and the 1992 plant rate was approximately 1.25%, while Jovanovic's rate was 8.5%. *Id* at 895 FN 2.) This is how the issue of the qualification of EEOC's claimants should be resolved, by looking specifically at what AutoZone required. Such an examination shows that the limited flexible leave EEOC's claimants required to keep working was entirely consistent with practice the at AutoZone and with legal precedent.

### 2. The Operation of AutoZone's Workplace

AutoZone's policy of forgiving absences and AutoZone's attendance data show compliance with a twelve-point cap on absences was far from an absolute standard that could not be modified. AutoZone's policies contemplated employee absences and AutoZone routinely covered absences—even unexpected ones. (PSUF 5-7.)

8

### a. AutoZone Admits That Medical or Disability Related Absences Did Not Provide a Basis for Termination Under the Company's Points Policy

AutoZone admits facts that show that pursuant to AutoZone's policy on medical and disability related absences, EEOC's claimants were qualified—notwithstanding absences resulting from their disabilities. This is a policy which has broad application in AutoZone's workplace. By its own terms, the policy is applicable to both absences related to disabilities and absences for medical reasons. AutoZone admits:"a documented disability would <u>not</u> result in an employee accruing points under AutoZone's attendance policy." (DRSUF 1.)AutoZone amended its attendance points policy in 2011, explicitly providing, "no points would be awarded to occurrences where an employee provides a doctor's note." (DRSAF 130.)

These admissions establish AutoZone's policy on forgiving disability related absences and absences that are medically documented could have been applied to EEOC's claimants. As another district court in this circuit explained in a case involving an employer's policy of forgiving disability related absences with appropriate documentation:

> "Moreover, [the employer's] position regarding [the employee's] absences appears to be contradictory. [The employer] has stated that, if [the employee] had brought in a doctor's note excusing her absences, [the employee] would not have been terminated. However, if [the employee's] absences would have been acceptable with a doctor's note, her absences did not render her unable to perform the essential functions of her job."

*EEOC v. PML Servs. LLC*, No. 18-CV-805-BBC, 2020 WL 3574748, at *5 (W.D. Wis. July 1, 2020) (internal citation omitted). In this case, given Defendants' admissions regarding its alleged policy, it cannot also assert that the claimants' impairment related occurrence points rendered them unqualified and outside the protections of the ADA.

AutoZone attempts to create an issue of fact by claiming that the forgiveness policy had some kind of an implied limit, even if such limit was not explicit. (Doc. #290,

PageID#6109-6110, brief pp. 7-8.)  AutoZone has put forward no facts to show how this operated in practice or that any of EEOC's claimants exceeded such an implied limit.  *Id.* Further, this assertion by AutoZone is inconsistent with the fact that AutoZone charged no points to an employee who left their shift early, regardless of the reason.  (DSOF 50.) AutoZone's forgiveness policy contained no requirement of advance notice and did not exclude forgiveness for absences without notice. *See* (Doc. #280, brief pp. 13-15.). AutoZone's practices clearly allowed for some flexibility in employee attendance, and would have allowed the claimants to continue working had that flexibility been extended to them.

### b. Satisfying AutoZone's Twelve-Point Attendance Policy Was Not Required For A Significant Number of Other Employees

AutoZone's policy of capping employee absences at twelve points does not reflect AutoZone's practice, as AutoZone permitted many employees to remain employed for an extended period after they reached the twelve point maximum.  AutoZone does not provide any credible evidence disputing this, nor can AutoZone avoid this evidence by having EEOC's expert analysis excluded under *Daubert*.

### i. AutoZone Cites No Record Evidence To Dispute EEOC's Attendance Analysis

EEOC has set forth uncontroverted evidence that under AutoZone's actual attendance policy practice, AutoZone employees routinely worked well beyond the accumulation of twelve points, mangers had significant discretion permitting points to be "zeroed" out, and AutoZone managers admit that, despite the written policy, they had authority to remove points for a medical reason if they so wanted.  Thus, EEOC has presented undisputed evidence that

10

AutoZone's twelve-point attendance policy, under which the claimants were terminated, was not essential to the job, and that AutoZone routinely allowed employees to work beyond the twelve-point threshold in its written policy.[1] *See* DRSUF 20-23.

EEOC set forth facts that many employees were permitted to go beyond the twelve-point threshold in its statement of undisputed facts. *See* DRSUF 20-23. EEOC established that 24% of individuals with more than twelve attendance points continued in their positions for at least 28 days after receiving their twelfth attendance point, and that employees within the relevant regions continued to work for periods of time longer than the EEOC's disabled claimants who were terminated under the attendance points policy. *Id*. 21, 22. EEOC presented facts showing AutoZone managers had the discretion to select reason codes that could zero out points for absence or tardiness. *Id*. 24. Further, AutoZone admits that occurrences related to a disability could result in points not being awarded. *Id.* 1.

In response to EEOC's 56.1 statement, though purportedly denying the fact, AutoZone presents nothing in the record to dispute these assertions. *See* DRSUF 1 (undisputed) and 20-22, 24 (disputed without citation to factual record). "Where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). AutoZone has not done so.

Since there is no citation to any facts to deny EEOC's undisputed facts, these facts should be deemed as admitted. *ExxonMobil Oil Corp. v. Amex Const. Co*., 702 F. Supp. 2d 942, 961

---

[1] AutoZone attempts to dispute that some of the claimants were discharged under the points policy, but the undisputed facts establish that, whether you call it job abandonment or pointing-out, each of the claimants was terminated for a points policy violation, despite their disability. See §§ II(C)(4), (8), and III, *infra*.

(N.D. Ill. 2010) ("Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate").

### ii. AutoZone's Attempt to Use *Daubert* to Exclude EEOC's Expert Fails

AutoZone cannot use the rules of evidence to avoid EEOC's analysis of AutoZone's attendance data. EEOC expert Dr. Erich Cromwell's report directly addresses whether near-perfect attendance as set forth in the twelve -point attendance policy was essential or a routinely required. Dr. Cromwell's report is both reliable and relevant. "Under the Federal Rules of Evidence, testimony is relevant as long as it 'has any tendency to make a fact more or less probable' than it would otherwise be." *Stollings v. Ryobi Techs., Inc.,* 725 F.3d 753, 768 (7th Cir. 2013). Expert opinion can weigh upon a discrete factor at issue. "[U]nder Rule 702, expert testimony need only be relevant to *an* issue in the case; it need not relate directly to the ultimate issue." *Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000).

AutoZones objections to Cromwell's report ignore the report's direct relevance to the issue of what AutoZone's attendance policy requires in the "actual practice" of the workplace. *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011). The report shows that under AutoZone's actual practice—as opposed to its written policy—strict adherence to twelve -point threshold is not essential.

Defendants argue Cromwell's expert analysis does not support disparate impact, non-discriminatory explanations of a disparity (Doc. #290, PageID#6113, brief p. 12),[2] a disparity based on a discriminatory factor (Doc. #290, PageID#6115, brief p. 14), or an analysis of discrimination based on comparing claimants with those who are similarly situated (Doc. #290, PageID#6116-7, brief p.15-16). AutoZone's argument demonstrates Defendants' failure to understand the purpose and relevance of the facts presented in Cromwell's report. EEOC is using the expert analysis for none of these purposes. Rather, the expert report, summarizes attendance records, which addresses whether strict adherence to the 12-point threshold is an essential function by evaluating actual employer practice.

EEOC's use of the calculations in Cromwell's report are distinct from the arguments raised in *Willard v. Mhm. Crr. Sers.*, 2015 U.S. Dist. LEXIS 154467 (D. Mass. Nov. 16, 2015) and *Hunt-Watts v. Nassau Health Care Corp.* 43 F. Supp. 3d 119. (E.D.N.Y. 2014). In neither of these cases did the plaintiff have evidence that many other employees were excused from the very function Defendant claimed was essential. In *Willard*, the court found the evidence supported that mandatory overtime *was* used by the employer to fill slots. *Willard*, 2015 U.S. Dist. LEXIS 154467. There, the plaintiff presented no evidence that other employees were excused from the requirement. In *Hunt-Watts*, the court found the other employees in plaintiff's

---

[2] AutoZone's citation to *Tiller v. Immke*, 2007 U.S. Dist. LEXIS 31136, *56, is misleading. Def.'s Mem. at 12. AutoZone cites this case for the proposition that there must be a statistically significant disparity and eliminate nondiscriminatory explanations "[w]ith respect to alleged disparate treatment or *failure to accommodate claims*." Id. (emphasis added). However, *Tiller* is *not* a failure to accommodate case and, in fact, is not even an ADA case. *See Tiller*, 2007 U.S. Dist. LEXIS 31136. *Tiller's* reasoning, like much of AutoZone's arguments regarding the expert report, has no application to the issue showing essential functions need to evaluate a reasonable accommodation claim.

role had performed 69 surgeries, which the plaintiff attempted to argue was non-essential. *Hunt-Watts*,43 F. Supp. 3d at 131.

In contrast to *Willard* and *Hunt-Watts*, EEOC has presented evidence of AutoZone excusing numerous employees from what AutoZone claims is an essential function -- meeting its attendance requirements. This type of evidence is akin to evidence which the Seventh Circuit found determinative in *Miller v. Illinois Dept. of Transp.*, where the court reversed the district court's ruling on essential functions of the job for failing to consider that:

> the team accommodated the various skills, abilities, and limitations of the individual team members by organizing itself according to those skills, abilities, and limitations. [Another employee] could not weld, so the other members did the welding when it was required. Another co-worker refused to ride in the snooper bucket, so those tasks, when needed, went to others. This was also true of bridge spraying, yard mowing, and debris raking for a crew member with allergies.

*Miller v. Illinois Dep't of Transp.,* 643 F.3d 190, 198 (7th Cir. 2011).

AutoZone does not, and cannot, contest the calculations made by Cromwell in his report. *See* DRSUF 20-23 (presenting no citations to the record or counter-report disputing the EEOC's factual statement); *ExxonMobil Oil Corp. v. Amex Const. Co.*, 702 F. Supp. 2d 942, 972 (N.D. Ill. 2010) ("although [defendant] contests that [plaintiff] has adequately shown proximate causation, [defendant] fails to set forth any alternative theory of causation or to point to expert testimony positing a different causal theory").

Instead of disputing the calculations, AutoZone attempts to argue that there may be distinguishing circumstances. Specifically, AutoZone argues some of these 293 tolerated violators who were relieved from the twelve-point requirement may not have received all the required write-ups, or that some may have been disabled, and somehow implies that Cromwell's report rests on disputed assumptions. *See* Dkt. 290 at PageID 6116-6120. Experts are allowed to make assumptions in reaching their conclusions. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d

14

753, 768 (7th Cir. 2013) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."). This is especially true in this case, where Defendants could have provided the data necessary to control for these factors but declined to do so. "It is generally recognized that a party has the burden of proof on an issue when the facts with regard to the issue lie peculiarly within the knowledge of that party." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 862 (5th Cir. 2010) (citing *McCormick on Evidence* 950 (3d ed., Edward W. Cleary ed., 1984)). AutoZone offers no facts or analysis to challenge these assumptions, including no factual support quantifying how many (if any) of the 293 tolerated violators had incomplete disciplinary write-ups or who were disabled when they exceeded the twelve-point level. *See* DRSUF 20-23, 29-31.

More importantly, EEOC and Cromwell are uninterested in *why* AutoZone tolerated certain violators, only that it did. If, indeed, the tolerated violators were all disabled employees being accommodated, it goes to show the claimants in this case were not unqualified and could also have been accommodated. If the tolerated violators were not all disabled, the twelve-point policy was not a routine expectation for employees writ large.

In other words, one may either assume all the tolerated violators were receiving excused points as a reasonable accommodation -- in which case accommodating the aggrieved individuals in this case certainly is a reasonable accommodation, meaning the remaining issue in this case is notice -- or one may assume the tolerated violators are not disabled but are instead skating by because they are favored by management or because they are missing some paperwork in their file. If the latter of the assumptions was the case, and the policy is so sporadically enforced that a quarter of the employees are tolerated violators, then excusing a limited amount of attendance

points as an accommodation for the aggrieved individuals certainly is an accommodation AutoZone could make in the routine line of cases.

As the Sixth Circuit noted, "full-time presence at work is not an essential function of a job simply because an employer says that it is. If it were otherwise, employers could refuse *any* accommodation that left an employee at work for fewer than 40 hours per week. That could mean denying leave for doctor's appointments, dialysis, therapy, or anything else that requires time away from work. Aside from being antithetical to the purpose of the ADA it also would allow employers to negate the regulation that reasonable accommodations include leave or telework." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).

### C. AutoZone's Admissions Show There is No Dispute of Fact that Each Claimant Is A Qualified Individual as Defined by the ADA

The undisputed facts also show each claimant was qualified, as none of them had the type of extreme attendance issues that would exclude them from the protections of the ADA. Had AutoZone followed its own alleged policy as to absences due to disability -- and allowed claimants the same flexibility it allowed to other employees; these claimants would not have been terminated. That any of the claimants also missed some work or accrued some attendance points for reasons other than their disability is not enough to render them unqualified. Whether an employee is qualified is measured at the time of the need for accommodation, not based on what might happen later. 29 CFR §1630.2(m). The aggrieved individuals needed a limited amount of leave, not an indefinite leave. Further, AutoZone's policy makes clear it expected absences to occur and that points to go up and down, since the points fall off after 90 days. Because AutoZone denies notice, AutoZone makes no claim of having engaged in any

interactive process with the claimants regarding their attendance. In fact, AutoZone admits they did not so engage. (Doc. #290 at PageID 6103, fn. 2, brief p. 2).

> "Generally, a plaintiff seeking a judicial remedy for the employer's failure to accommodate bears the burden of showing that a reasonable accommodation existed. *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir.2002); *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir.2001) (same). But where an employer fails to consult with the employee concerning a possible accommodation, the burden shifts to the employer to show the unavailability of a reasonable accommodation. *Mays*, 301 F.3d at 870.

*McMillan v. Potter*, No. 06CV2121, 2010 WL 1791268, at *5 (N.D. Ill. May 5, 2010). Given its failure to engage in an interactive process, the burden falls on AutoZone to show it could not have extended a reasonable number of additional attendance points to the claimants -- points which would have allowed the claimants to continue working, negating any possibility that they could be considered "unqualified."

The EEOC does not need to show the absences caused by the claimants' disability were the sole or even primary reason that the claimants accrued attendance points.[3] As the Supreme Court recently explained, "Often, events have multiple but-for causes." *Bostock v. Clayton Cty.*, Georgia, 140 S. Ct. 1731, 1739 (2020). Thus, a prohibited factor "need not be the sole or primary cause of the employer's adverse action" in order to be a but-for cause of the adverse action. *Id*. at 1844. Here, EEOC can show each of the claimants would not have been terminated but for absences caused by their disability and that their disability did not preclude them from

---

[3] Further, while it is not necessary for this court to resolve the issue, because the EEOC satisfies the "but for" standard, the ADA may be even more permissive than the "but for" standard. A recent decision highlights that while the ADA Amendments Act of 2008 amended the causation standard language from "because of" to "on the basis of" disability, it is still an open question within the Seventh Circuit as to whether the ADA requires the traditional but for standard. *Abudayyeh v. Envoy Air*, No. 19 C 5802, 2020 U.S. Dist. LEXIS 180571, at *12 (N.D. Ill. Sep. 30, 2020).

continuing to work at AutoZone. That is enough to show each was qualified but for AutoZone's failure to accommodate their disability.

### 1. Gary Clay

Clay suffers from a herniated disc which causes constant pain with varying levels and would sometimes need to miss work because of the severe pain from his herniated disk. (DRSUF 33 and 36.). The time-off Clay needed did not make him unqualified for his job.[4]

AutoZone's argument regarding Clay's[5] ability to meet the attendance required for the job is not actually an argument about his ability to come to work regularly. Instead, AutoZone's argument boils down to whether Clay provided doctor's notes regarding his absences—not whether Clay was actually qualified for his position given the time off that he needed. *See* Doc. #290 at PageID#6136-38. As stated above, the issue of notice is disputed. Clay testified he provided every doctor's note he received to AutoZone, but his manager would simply throw the notes in the trash. (PRSAF 349.) Autozone even cites to Clay's deposition testimony where Clay stated he told Blyden about his back injury. Dkt. 290, PageID 6152 at fn. 68. The fact that AutoZone denied notice of the reasons for Clay's absences does not render Clay unqualified.

Of Clay's 14 infractions,[6] AutoZone's own records show 9 are coded as "sick/accident" (with 8 of those infractions being excused and one being unexcused). (DSRUF 38.)

---

[4] The EEOC's response addressed the separate claim regarding Clay's need to sit as an accommodation for her herniated disc. *See* Dkt. 280 at brief p. 46.

[5] The EEOC has a separate accommodation for Clay regarding his request to sit down as needed during his shift to accommodate his back injury. EEOC did not move for summary judgment on that claim, and in this section however the EEOC focuses only on Clay's need for limited excused absences here.

[6] Infractions are occurrences that resulted in points. DSROF notes that Clay had 27 occurrences. However, not all occurrences are treated as equal since some result in points which can get you disciplined and even fired, and some result in no discipline whatsoever (i.e. "management change due to sales").

18

AutoZone's own Regional Human Resources Manager, Blyden, testified that if she had seen one of Clay's doctor's notes she would have excused his absences. (DSRAF 147.)   If these points had been excused, then Clay would not have been terminated. The fact that, under AutoZone's own policy, Clay would have remained employed establishes he was qualified.

AutoZone's reliance on cases like *Preddie v. Bartholomew Consolidated School Corp*., 799 F.3d 806, 813-14 (7th Cir. 2015) is easily distinguishable from the instant case. (Doc. #290, PageID#6138, brief p. 37.) In *Preddie*, the employee-plaintiff was not a retail employee, but  a teacher whose consistent attendance in the classroom was necessary for the effective education of his pupils. Unlike Clay, Preddie (the only teacher employed to be in his classroom) was absent from his classroom 23 times in a school year. *Id.* at 810-811. The cases Defendants relied on to challenge Clay's discrete requests for time off as inability to perform an essential job function all dealt with much severe instances of chronic absenteeism or involved the need for extended leaves of absence that are not present in the case at bar. (Doc. #280, brief pp. 28-30.)

Furthermore, Defendants fail to meaningfully address the Seventh Circuit precedent which explicitly states, "[t]ime off may be an apt accommodation for intermittent conditions." *Severson v. Heartland Woodcraft, Inc*., 872 F.3d 476, 481 (7th Cir. 2017) (quoting *Haschmann v. Time Warner*, 151 F.3d 591, 602 (7th Cir. 1998) and *Byrne v. Avon Products, Inc*., 328 F.3d 379, 381 (7th Cir. 2003)). As Judge Rovner pointed out in her concurrence in *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 838 (7th Cir. 2017), under Seventh Circuit precedent, an employer could be required to provide a week of leave "several times a year, every year." Indeed, in *Jovanovic,* the Seventh Circuit emphasized "we [do not] hold that an individual with erratic attendance can never be a qualified individual with a disability under the ADA." 201 F.3d at 900.

### 2. Gonzala Gomez

Gomez suffered from migraine headaches for which she began treatment as early as 2006 (DRSUF 43 and 45), a few years after she began working at AutoZone in 2003. According to Gomez's medical records and the declarations of her treating physicians, by 2010 Gomez experienced two to three headaches per week and sometimes experienced nausea, vomiting, and visual auras with these headaches. (DRSUF 46.) In March 2008, AutoZone granted Gomez short-term disability leave. Records Defendants produced show this leave was granted because Gomez was experiencing vascular headaches. (PSAF 166.) It is also undisputed that one of Gomez's treating physician provided a work restriction that recommended that she "work morning shifts, as second or third shifts provoked migraine headaches." (DRSUF 47.)

At the time Gomez was terminated in 2010, AutoZone agrees she had reached 13.5 points. (DRSUF 48.) AutoZone cannot rebut their own records which acknowledge Gomez's final two points were due to illness or accident, and that Gomez produced a doctor's note showing she was to be excused from work at that time. *Id.* In response to this fact, AutoZone again makes a notice argument – not a qualification argument. Under AutoZone's own policy of forgiving disability related absences and consistent with the attendance of many other employees, AutoZone should have excused these points and allowed Gomez to continue to work.

AutoZone attempts to create a question of fact as to the true reason for the two absences that led to Gomez's termination. This attempt fails. Medical records undisputedly establish Gomez was very ill immediately prior to her termination, and the absence leading to her termination was due to severe headache accompanied by dizziness and vomiting. (DRSUF 50.) In violation of LR 56.1, AutoZone cites additional testimony to create an issue of fact by noting

Gomez had asked for this time off due to house guests and AutoZone had refused her request. (DRSUF 50.) However, this in no way contradicts Gomez's testimony,  the records of her physicians, or AutoZone's own records that on those dates she was absent due to "sick-accident." Though Defendants cite to Gomez's impressions of her attendance throughout 2010, nothing Defendants cite actually contradicts AutoZone's own records showing she was consistently at work, with long period of perfect attendance, that she received treatment for an extreme migraine on July 19, 2010, and that as a result she was excused from work through July 27, 2010.

Two additional facts AutoZone cannot dispute illustrate Gomez was qualified to work at AutoZone.  Defendants' own records show "Gomez averaged only about one occurrence per month in the twelve months before she was terminated, and she sustained several long periods of perfect attendance." (PSUF 49).  Defendant's records also show there were occasions where Gomez had a point removed as the result of perfect attendance as defined by Defendants themselves.  (*Id.*)

Most of AutoZone's response to Gomez's facts is a discussion of notice, which  EEOC again asserts the question of notice is an issue of fact for the jury.  Defendants cite to testimony from Tina Cleveland, who stated she decided to terminate Gomez when she learned Gomez had gone above 12 points, and before she learned of the doctor's note. Cleveland added the note did not specifically state that Gomez missed work due to a disability. (*Id.*)

AutoZone's position that it lacked notice must be evaluated by the jury, especially given AutoZone's admission that "store managers will inquire why an employee is presenting a doctor's note as an explanation for an absence or tardiness…" (DRSUF 1.) Per AutoZone's alleged policy, Gomez would have had the opportunity to explain she was off work because of

migraine headache. Whether AutoZone knew or should have known the points that led to her termination were due to her disability will be for the jury to resolve.

Under AutoZone's own alleged policies, Gomez was clearly a qualified individual, and, per their policies, she should never have been terminated. She was terminated at 13.5 points, despite presenting documentation that her final two points were due to a medical condition and had documented the medical basis for prior occurrences as well. As such, her disability was a "but for" cause of her termination. As discussed in the EEOC's initial memo, intermittent short-term leave for recurring conditions can be an appropriate accommodation under the ADA. (Doc. #280, brief p. 19.)[7]

### 3. Kyle Jackson

Jackson is a trilateral amputee who uses prosthetic legs to walk. Jackson is missing his feet, most of the tissue in his legs, and most of his left hand, and is unable to walk without prosthetics. (DRSUF 51, 52.)  In June 2009, Jackson required treatment in connection with his prosthetics which required him to be absent. (DRSUF 52, PSUF 53.)

AutoZone has cited no evidence to create a question of fact as to whether Jackson was qualified for his position as a result of absences during this time.  The parties agree Mr. Jackson received points for absences in April 2009. Jackson's Attendance report produced by Defendants indicates he received eight point for his absences on June 25 and June 26, 2009. (DRSUF 58.) The parties agree Jackson was terminated on July 7, 2009, after he received eight points for the June absences.  (DRSUF 59.)

---

[7] Throughout this brief EEOC cites to PageID, however for Doc. #280 each page of the brief contains PageID 5824; therefore, the EEOC cites only to the page numbers of the brief.

During this time in June, Jackson had an infection on his legs that were exacerbated by his ill-fitting, worn prosthesis. His prosthesis had become so worn that he required new prosthetics. Jackson did not work because of his infection, and received points for these absences. (PSUF 53; DRSUF 59.) In its brief, AutoZone does not argue a request for medical leave or to a request to work in a wheelchair while his infection cleared would have disqualified Jackson from performing his job. (Doc. #290, PageID#6139-6140, brief pp. 39-40.) Having failed to do so, no question remains as to whether Jackson was qualified under AutoZone's own standards.

Both in its brief and in denying Jackson could have returned to work after 5 or 6 days of leave, AutoZone makes a series of arguments focusing on the conversation between Jackson and his manager about his situation. During this conversation, Jackson testified he told his manager he needed five or six days off or to work with a wheelchair. (Doc. #290, PageID#6139-6140, brief pp. 39-40; DSRUF 61.) AutoZone first relies on testimony from Jackson's manager, claiming this conversation didn't happen. (DRSUF 53, 54.) This dispute over the conversation between two witnesses creates a question of fact for a jury on notice, not qualification. AutoZone also points out that Jackson testified to not knowing whether he was scheduled to work during the five or six days that he needed off, which could cast doubt on whether Jackson really talked with his manager. AutoZone's argument asks why the manager would call Jackson if he was not scheduled to work. This, too, is evidence relevant to notice involving credibility -- not a question of qualification.

AutoZone also emphasizes that Jackson never submitted medical documentation to suggest he needed time off, and no medical provider told Jackson he needed time off from work or school in June 2009. (DRSUF 53.) AutoZone muddies the facts that are in dispute with these

additional facts. See LR 56.1 These additional facts, however, do not create a question of fact on qualification. As the EEOC previously noted, there is no requirement that an employee with a visible, known disability provide written documentation of his need for accommodation, unless asked by the employer. *Malas v. Hinsdale Twp. Disrict #86*, No. 15-CV-10490, 2019 WL 2743590, at *21 (N.D. Ill. July 1, 2019); *See also* EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA, No. 915.002, at Q/A # 8 (10/17/2002), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting. Further, Defendants mischaracterize Jackson's prosthetics provider's deposition testimony. Such mischaracterization is an example of the problems stemming from AutoZone's failure to submit a statement of additional facts, where EEOC could have responded to clarify the record. DRSUF 53 (citing to and mischaracterizing the deposition testimony of Kirk Pils, without submitting an additional fact.)

Many of AutoZone's responses to the facts regarding Jackson are similar, involving responses that do not comply with LR 56.1. AutoZone denies that Jackson required the time off to recover from the infection (DRSUF 53), that he was able and willing to return to work after an absence of about five to six days, was able to resume wearing his old, worn prosthetics after his infection cleared up (DRSUF 61, 62), and did not have another infection that prohibited him from wearing his old, worn prosthetics through at least August 26 (when he received his new prosthetics)(DRSUF 63). In DRSUF 61-63, Defendants only cross-reference DRSUF 53 and 54, which only pertain to whether Jackson provided notice or proof he could not wear his prosthetics because of an infection. These denials – though successful at creating a confusing picture -- do not amount to evidence that creates a question of fact as to Jackson's ability to perform his essential job functions. (DRSUF 61-63, 53, 54.)

24

One issue in particular requires a response. AutoZone objects to EEOC's reliance on Jackson's unemployment records, including his statement in those records regarding the conversation that he had with his manager in which he was terminated. (DRSUF 64.) Here, AutoZone incorrectly argues the documents pertaining to Jackson's unemployment insurance claim-- submitted prior to his deposition -- is inadmissible as hearsay. Jackson submitted his unemployment insurance claim to the Missouri Division of Employment Security shortly after his termination, much closer in time to the events than his deposition. (DRSUF 64; Exh. 7 of Jackson Dep.) Such prior consistent statements are permitted under FRE 801(d)(B). Jackson's prior statement is therefore not hearsay and is admissible to support Jackson's testimony.

Moreover, Jackson's unemployment insurance claim constitutes public records, which are not excluded by the rule against hearsay. According to the Fed. R. Evid. 803(8), evidence constitutes public records if it sets out "a matter observed while under a legal duty to report...a matter observed by law-enforcement personnel," and if the opposing party does not show a basis for discrediting the trustworthiness of the document set forth. Notably, AutoZone has not put forth any grounds to suggest Jackson's unemployment insurance application lacks trustworthiness.

While the jury must decide whether Jackson gave notice of his disability by telling AutoZone his store manager that he needed five to six days off for his infection to clear up or permission to perform his job using a wheelchair, the undisputed facts show Jackson was qualified.

25

### 4. Jerald Lindsey

Lindsey had Bell's Palsy, a nerve condition that substantially limited his ability to speak, eat, and interact with others.[8] (DRSUF 65.) AutoZone does not dispute that on May 8, 2011, Lindsey was treated at a hospital and was diagnosed the same day with this nerve condition, and that Lindsey treated his symptoms (prolonged lip swelling, twisting mouth, speech difficulty, blurry vision, and eye tearing) with steroids. (DRSUF 65, 66, 68, 69, 70.) AutoZone also does not dispute that two weeks after diagnosis, Lindsey could have returned to work without any limitations. (DRSUF 80.) Nowhere does AutoZone take the position that they could not have accommodated a leave of absence for Lindsey for up to two weeks, the amount of time Lindsey would have required for his Bell's Palsy symptoms to abate. (Doc. #290, PageID#6140, brief p. 39.) AutoZone clearly could have accommodated such a leave under their policy and practice. AutoZone addresses Lindsey's claim with a series of other arguments, none of which create a question of fact as to whether he was qualified. *Id.*

AutoZone points to prior discipline to assert Lindsey was terminated for job abandonment and to argue he did not suffer from Bell's Palsy during his employment. (Doc.

---

[8] In a footnote in its response, AutoZone claims Lindsey admitted he "did not have any disability during their[his] employment with AutoZone," and cites to its own facts where Lindsey allegedly admits he had no disability during his employment with AutoZone, however AutoZone is mischaracterizing Lindsey's deposition testimony. Lindsey had an episode of Bell's Palsy on May 8, 2011 and believes he was fired on May 9, 2011 by his store manager Jessica Isom. (PSUF 81, 82.) Therefore, this does not provide any dispute of fact that Lindsey has a disability under the ADA. Further in DRSUF 79, AutoZone asserts that they dispute that Lindsey has a disability, but similarly fails to support that dispute with any evidence that Lindsey was not limited in the major life activity of interacting with others during his Bell's Palsy episode. Neither of these instances provide any reason to revisit AutoZone's concession that all EEOC's claimants have a disability under the ADA. (Doc. #290, PageID#6111, brief p. 10.) Further, AutoZone does not dispute that Lindsey has had two episodes of Bell's Palsy (DRSUF 65, 76.) Under the Amendments Act, short term and episodic conditions that cause substantial limitations can be considered disabilities. *Gogos v. AMS Mechanical Systems*, 737 F. 3d (7th Cir. 2013).

#290, PageID#6140-6141, brief pp. 39-40; DRSUF 65.) This is simply Defendants' attempt to confuse the issue.   On one hand, AutoZone does not dispute Lindsey had accrued only eight points prior to May 8, 2011. On the other hand, AutoZone asserts Peetz terminated Lindsey for job abandonment  because he "failed to report to work after April 10, 2011." (DRSUF 65, 83.) If Lindsey had not yet reached the twelve-points attendance threshold prior to May 8, 2011, on the day of his Bell's Palsy episode, why was he terminated for job abandonment or missing work? Indeed, it is peculiar how AutoZone asserts in DRSUF 82 that Peetz made the decision to fire Lindsey after he failed to report back to work after April 10, 2011 despite AutoZone's own records (cited to support PSUF 82) which show Lindsey only had one absence between April 10, 2011 and May 7, 2011. (DRSUF 82.)  AutoZone's own records also show that Lindsey received attendance points for the days he was treated for and requested leave to recover from Bell's Palsy, which consequently put him over 12 points. AutoZone's records state Lindsey had an effective termination date of May 21, 2011 – thirteen days after his treatment for Bell's Palsy. (PSUF 82; Ex. C, D-17731.)

In its brief, Defendants assert that it is undisputed that "Peetz terminated his employment for job abandonment before Lindsey ever supposedly came to the store with paperwork saying he had Bell's Palsy." (Doc. 290, PageID 6140.)  Defendants allege that EEOC did not present evidence to dispute DSOF 407 that supposedly supports Defendants' contention that Peetz made the decision to terminate Lindsey before Lindsey came to the store on May 9, 2011.  However, Defendants only assert Ms. Peetz subsequently (after the counseling on April 10, 2011) terminated Lindsey's employment for job abandonment—not that that the decision to terminate

occurred prior to Lindsey's Bell's Palsy episode on May 8, 2011. (DSOF 407.)[9] Further, EEOC disputed this fact because Lindsey testified that he remembered working after the serious counseling on April 10, 2011. (PRDSOF 407.)

AutoZone's position on this issue can be resolved by the jury, as it is part of the notice analysis. AutoZone's challenge to the credibility of Lindsey's testimony of his coming into the store to inform his manager of his condition cannot be resolved in summary judgment.

AutoZone's response to the facts detailing Lindsey's medical condition -- including the required time for treatment -- is the admissibility of Lindsey's medical records. Defendants incorrectly contend Lindsey's medical records constitute hearsay. (DRSUF 70). However, Fed. R. Evid. 803(4) expressly excludes statements made for medical diagnosis or treatment from the rules against hearsay. The proffered evidence of Lindsey's medical records consists of Lindsey's medical diagnosis and symptoms. His medical records are not only admissible, they also contain undisputed facts concerning the nature of Lindsey's medical conditions and the required treatment for Lindsey.

AutoZone's other discussion of Lindsey focuses on whether, by walking into the AutoZone store with a visible impairment and a doctor's note in his hand, which his manager

---

[9] The October 11, 2019 declaration from Rebecca Peetz cited by Defendants to support DSOF 407 states Peetz made a decision to terminate Mr. Lindsey for job abandonment. No date is provided as to when that decision was made. Defendants have cited no evidence to support its new fact asserted that Peetz decision to terminate Lindsey occurred **before** his Bell's Palsy episode on May 8, 2011. If it had properly asserted this new additional fact, EEOC would dispute it, as AutoZone's records indicate Lindsey's effective termination date was May 21, 2011—weeks after he incurred points for his disability related absences. (2009-2011 Indianapolis and St. Louis Termination Report, D-17731). Defendants improperly rely on this additional factual material-- not in the form of an additional fact—in every response it provides to EEOC's Undisputed Material Facts related to Lindsey (DRSUF 65-83) either to dispute the fact or argue that it is not material. The termination report (D-17731) is attached in Exhibit C and has been modified to hide other employee data in the Indianapolis and St. Louis region, and Lindsey's personal information such as address, phone number, and social security number.

refused, Lindsey provided enough information to AutoZone to show that he needed an accommodation. This discussion is clearly relevant to notice, and not relevant to whether Lindsey was qualified.

EEOC's affirmative motion does not include the issue of notice because EEOC agrees disputed issues of material fact exist as argued in EEOC's Response to AutoZone's motion for summary judgement. Still, Defendants' use of *Hooper* to dispute that Lindsey did not have the correct type of medical documentation is unpersuasive. The day after Lindsey was released from the hospital due to his Bell's Palsy episode, his mother drove him to the AutoZone so Lindsey could notify his manager about his disability related absence and ask for some time off to recover. (PSUF 67, 81; DRSAF 185, 187). In his hand, Lindsey carried documentation from the hospital explaining his Bell's Palsy. (PSAF 188, 197.) Defendant cites to *Hooper* to argue Lindsey did not have the correct type of medical information. But in *Hooper*, the employee had a medical release without any restrictions. *Hooper v. Proctor Health Care Inc.*, 804 F. 3d 846, 852 (7th Cir. 2015). Lindsey testified the note described Bell's Palsy. He did not testify, not that he had a medical release without restrictions. (PSAF 197.) Lindsey's store manager terminated Lindsey without looking at the medical information or engaging in a discussion that could have led to a request for more medical information, if AutoZone thought it was necessary. (PSUF 82.)

AutoZone's attempt to distinguish *Bultemeyer v. Fort Wayne Community Sch.,* 100 F. 3d 1281 (7th Cir. 1996), by claiming Lindsey had no disability that impacted his ability to communicate, is unsupported by the record. This attempt is also not relevant to the issue of whether Lindsey was qualified, but rather to the issue of notice. (Doc. #290, PageID#6141, brief p. 40, FN 54.) Lindsey's medical records and deposition testimony show that Lindsey suffered from the physical symptom of slurred speech as well as the psychosocial symptoms individuals

who have Bell's Palsy typically experience, which include fear, anxiety, helplessness, and a limitation in interacting with others due to these symptoms. (PSUF 67, 70-75, 79.) Similar to *Bultemeyer,* Lindsey had difficulty communicating and speaking because of his disability, but came into the store in an attempt to notify AutoZone about his hospitalization and to request not to be terminated under the points policy. (DRSUF 66; PSUF 80-81.)

AutoZone also focuses on employment records from a bakery that indicate Lindsey worked that week at the bakery. The responsibilities at the two jobs were fundamentally different. (Doc. #290, PageID#6140, brief p. 39; DRSUF 71-75; 80-81.) Where the bakery position did not require Lindsey to interact or socialize with others, his position at AutoZone did. (Doc. #290, PageID#6140, brief p. 39; DRSAF 199.) Given these differences, AutoZone's emphasis on Lindsey's alleged ability to work at the bakery does not create a dispute about whether Lindsey was qualified to work at AutoZone.

Defendants also contend now, almost nine years after Lindsey was fired, that they could have accommodated him by allowing him to do some parts of his job, even though one of the primary responsibilities on their job description for his position was interacting with customers. (Doc. #290, PageID#6140, brief p. 39; DRSUF 67.) This is an admission that should put an end to any question as to whether Lindsey was qualified. None of the evidence cited by AutoZone creates a question of fact that about Lindsey's qualification. Lindsey was qualified to perform his job with reasonable accommodations – if AutoZone had followed their own policy of excusing disability related absences or accorded him the same flexibility that they showed other employees as indicated in their employee attendance database. All other issues AutoZone raises are disputes of fact about notice.

30

### 5. Julio Lozada

AutoZone does not dispute Lozada's tachycardia is a covered disability that affects major life activities of breathing, walking, heart palpitations, and chest pain. (DRSUF 84, 85, 87 and 88.) AutoZone disputes why Lozado missed work in April 2009, which is the absence that led to his termination. AutoZone also disputes when Lozada could have given notice of his disability and returned to work, asserting that he could not have done so before September 2009 when he received his formal diagnosis of SVT. (DRSUF 84, 90.)

AutoZone does not cite any record evidence to show Lozada was unable to work between April and September 2009, except for Lozada's own testimony that he did not work.[10] (DRSUF 90.) The fact that Lozada did not work is not evidence that he could not have —if AutoZone had given him the opportunity. Whether AutoZone had notice of Lozada's physical impairment and his need for accommodation in April 2009 is an issue AutoZone can dispute based on the date of Lozada's diagnosis. But evidence of the date of Lozada's formal diagnosis is not a proper basis for disputing whether Lozada missed work due to other heart problems that sent him to the hospital before his final diagnosis, nor is it a proper basis for disputing whether he was physically able to work during the process that led to his final diagnosis, and thus whether he was qualified for work.

AutoZone fired Lozada after he incurred 19 attendance points as a result of his disability, AVNRT/SVT. One of these occurrences on April 14, 2009 (which is in the middle of the 4 infractions that result in Lozada's termination), was in fact coded as "excused – sick/accident"

---

[10] The EEOC is not seeking backpay for Lozada since he exited the labor market following his termination from AutoZone.

which suggests AutoZone knew about Lozada's condition and his need for a limited leave.[11] Lozada had worked 2 years prior this SVT episode and there is nothing in the record to suggest—and AutoZone has cited no such evidence—that after a few weeks of leave in April, Lozada could not have resumed working successfully at AutoZone as he had for the previous 2 years.

The fact that Lozada did not present a doctor's note to AutoZone indicating that he required leave does not dispose of his claim either. "The employee need not use the word accommodation or any other magic words. . ." *See Matland v. Loyola Univ. of Chicago*, 12 C 5165, 2013 WL 5818884, at *4-*5 (N.D. Ill. Oct. 28, 2013) (employee with lung disease triggered employer's duty to engage in the interactive process by indicating in a performance review that his illness was debilitating and his treatment required "a tremendous amount of both psychic energy and time," even though he did not make a specific request for an accommodation.) AutoZone's own policy says that they do not have to say "ADA" or submit anything in writing or even request a specific accommodation. (PSUF Error! Reference source not found..)

Such leave was fully consistent with AutoZone's stated policy of excusing disability related absences and the flexibility offered to other employees who accrued more than the 12 points. This need for leave did not stop Lozado from being qualified.

### 6. Herman Matasar

---

[11] The EEOC understands this is a disputed material fact regarding notice which if why Lozada's claim should go to a fact finder.

Defendants do not dispute that Matasar has been insulin dependent for over thirty years. (DRSUF 91.) Defendants admit that Matasar had frequent doctors' visits and hospitalizations due to low blood sugar and that he described himself as "brittle diabetic." (DRSUF 94.) Defendants do not dispute EEOC's expert declaration that Matasar had gastroparesis and frequently experienced its symptoms, such as nausea and severe vomiting, which required medical attention. (DRSUF 95.) Defendants admit Matasar's doctor has attested that Matasar's diabetes was accompanied by and likely caused additional digestive problems, such as vomiting, diarrhea, nausea and reflux. (DRSUF 96.)

For purposes of this motion, it is undisputed that Herman Matasar was terminated on December 3, 2009 for failure to return from lunch on November 28, 2009. (DRSUF 98.) It is undisputed that a corrective action form for that date shows that Matasar is to be terminated for reaching 12 points. While Defendants claim to dispute this fact, their response does not contain contradictory information, since the designation that Matasar is to be terminated for reaching 12 attendance points is synonymous with saying he should be terminated for absenteeism. Defendants also purport to dispute that Matasar brought Defendants a doctor's note between November 28 and December 3, 2009; however, they again fail to support their "dispute" of this fact. AutoZone does not dispute the fact that it received the doctor's note – they cannot, for it is clearly labeled with Defendants' bates number – nor do they dispute its authenticity. They merely cite to deposition testimony from Tina Cleveland that she did not receive a copy of the note at the time it was provided to AutoZone. (Doc. #270-1, citing pp. 161:11-163:9.) The fact that AutoZone store managers failed in their obligations, per company policy, to forward a doctor's note to Cleveland, does not change the fact that *Defendants* knew that Matasar had been unable to return to lunch for medical reasons. (DRSUF 98.)

33

Furthermore, it is undisputed that of the 12 points that led to Matasar's termination, five were for occurrences that AutoZone itself labeled as "sick/accident" and that medical records establish that he was experiencing diabetes related illness on dates that account for at least four of his 12 attendance points. (DRSUF 100.) Nor do Defendants dispute that Matasar averaged only one occurrence per month during the period that he was subject to the 12-point termination policy. Defendants only dispute that they knew that Matasar's absences were due to his diabetes -- an issue which EEOC agrees must be reserved for the jury. (*Id.*)

On the question of qualification, if AutoZone followed its policy on forgiving medical and disability related absences and given Matasar the same flexibility its attendance database indicates was possible, Matasar could have remained employed.

### 7. Sean Robbins

Sean Robbins testified he was diagnosed with migraine headache in the early 2000s. (PSUF 101.) He further testified he was prescribed medication, Imitrex, for his migraines as a child but only took it for a few months because it was not effective. (PSUF 102.) He also testified migraines have caused him nose bleeds, nausea, vomiting and sensitivity to light and sound. (PSUF 104.) He described, under oath, that an extreme migraine feels like being hit repeatedly in the head with a bat, and that during these headaches, which occur a few times a month, he is not able to do anything. (PSUF 106.) Defendants admit this is his testimony. (DRSUF 101, 102, 104, 106.)

Defendants attempt to dispute that Mr. Robbins has actually been diagnosed with migraines or experienced them on the basis that "[n]one of the voluminous medical records pertaining to Mr. Robbins" verify this information. *Id.* However, Defendants attempts to

manufacture a dispute as to Mr. Robbins' status as an individual with a disability should be disregarded. Defendants assume facts not in evidence. They do not cite to testimony in which Mr. Robbins agrees that his medical records contain no mention of migraine headache, nor have they put his medical records into evidence for the court to examine.

In the deposition testimony cited by Defendants in support of DRSUF 101, counsel for Defendants told Robbins that Mercy Hospital "told us that no documents existed for your treatment there." When asked why that could be, he responded he believed Mercy was in error. (Doc. #277-1, pp. 39:8-40:6, 42:12-20.) Robbins was asked if he had treatment at Mercy and he replied he had treatment there in 2016 and 2017 and prior to that, though he could not recall the dates. Given that the Court limited the scope of time for which medical records could be produced to the period of time around the employment events at issue in this case, approximately 2009 to 2011, it is not surprising that the records obtained did not reflect medical care that Mr. Robbins explained occurred in the early 2000s and in 2016 and 2017. Defendants for counsel also cite to deposition testimony in which Mr. Robbins was confronted with a medical record which showed a past history of "headache" and he explained that believed he would have said migraines. (*Id.* at 44:1-47:8.)

Given that Robbins testimony has gone unrebutted with appropriate citations to actual contradictions in the record or evidence submitted in the form of additional facts as required by LR 56.1, his testimony regarding his disability should be deemed admitted. As his testimony clearly indicates that he has a longstanding regularly recurring impairment that, when active, substantially limits his ability to engage in tasks of everyday living, to concentrate and to work, and the fact that Defendants did not challenge Robbins' status as an individual with a disability in their response to EEOC's motion, EEOC should be granted summary judgment on this issue.

35

Sean Robbins had two periods of employment with AutoZone. The first was from May 20, 2009 to September 3, 2009, after which he was terminated for accumulating attendance points. (PSUF 107, 109.) During this first period of time that Robbins worked, it is undisputed that on six of the occasions on which he received attendance points, he was tardy, but he did work. (DRSUF 111; Defendants' response should be disregarded as it is non-responsive to the facts presented.) It is undisputed that a performance appraisal was prepared for Robbins after his termination, and despite his attendance he was rated as consistently meeting expectations. (DRSUF 112; Defendants purport to dispute this fact on the basis that Robbins may not have been given the appraisal, but they do not dispute its contents or authenticity, nor do Defendants cite to any record evidence in support of their alleged disputation.) The fact that Robbins' attendance did not render him unqualified is further supported by the fact that, despite knowledge of his prior termination, Defendants *rehired* Robbins on November 15, 2010. (DRSUF 113, 114.)

Defendants' records undisputedly show that during his second period of employment, Robbins had ten occurrences, about one every week, and of these he was tardy but worked on six and that three of the occurrences were coded "sick/accident." (DRSUF 115.) Therefore, Robbins was terminated for having to be absent from work four times and being tardy six. This level of absenteeism may have rendered Robbins an undesirable employee, but not an unqualified one. As the Seventh Circuit has repeatedly noted, "Federal employment discrimination laws do not limit their protection to perfect or even good employees. They also protect employees who misbehave or perform poorly." *Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011).

### 8. Adrian Viguera

AutoZone does not dispute that Viguera's back impairment is a covered disability and that during episodic flare-ups "he is in unbearable pain, can't move, and has to lay on the floor while his family brings him food and medicine." (DRSUF 123.) AutoZone disputes EEOC's facts showing Viguera improved significantly after engaging in physical therapy. (DRSUF 124-129.) However, AutoZone's lengthy commentary does not constitute record evidence. AutoZone has put nothing into the record showing Viguera was not ready to return to work in September 2009—and certainly not when he completed physical therapy in October 2009. AutoZone can dispute it had notice of whether Viguera was ready to return, but its opinion that Viguera was not ready to return does not create a question of fact for the jury.

Viguera's back condition dates to the early 1990s, with infrequent flare ups. (DRSUF 119.) Viguera had worked the same sort of position as a delivery driver for an AutoZone competitor for the year prior to working at AutoZone. (DRSUF 122.) Nothing in the record contradicts that after progressing in physical therapy to the point where he could return to work at AutoZone, Viguera's attendance would render him unqualified.

AutoZone's argument that it terminated Viguera because of job abandonment and not due to attendance is sheer sophistry. First, the job abandonment policy is contained within the attendance policy. (PRSUF 2, *citing* Ex. 28, Store Handbook at D-0559.) Second, Viguera's attendance report only has one unexcused occurrence on August 4, 2009. (PSAF 231, *citing* Ex. Viguera 5, Attendance Report (D-00013556).) To be fired for job abandonment an AutoZoner must "fail[] to call in or report to work for 2 consecutive days…" (PRSUF 2, *citing* Ex. 28, Store Handbook at D-0559.) AutoZone's own record clearly indicates the manager coding Viguera's occurrences knew Viguera would not be reporting to work since all the occurrences, save the last

one, is either "excused" (6 occurrences) or "management change due to sales (1 occurrence). (PSAF 231, *citing* Ex. Viguera 5, Attendance Report (D-00013556).)

Lastly, Cleveland testified that they spent over a month between his last day of work and creating the termination paperwork because they were "trying to find out I guess what you could say what the story was behind why [Viguera] had not been to work." (PSAF 242, *citing* Ex. 1, Cleveland dep. pp. 30:22-32:5). Given AutoZone's alleged eagerness not to terminate Viguera, it seems that they did not consider him to be "unqualified" well after his last day at work. If this is so, it should have been prepared to welcome him back when he was able to return.

### D.  AutoZone Cites No Caselaw that Negates the Qualification of the Claimants

The caselaw on attendance provides no safe harbor for AutoZone's failure to accommodate these claimants. In its response brief, AutoZone seems to ignore the very significant factual distinctions between the operation of its attendance points policy and the cases it cites.  Each of the cases cited on pages 5-9 and 20 of AutoZone's brief involves facts that are not at all similar.   All are cases where an employee was terminated after much more extensive leave than the claimants here and none offered evidence as to the employer's more favorable treatment of other employees under the same policy.

In *Whitaker v. Wisconsin Dept. of Health Serv.*,84F. 3d 681, 684 (7th Cir. 2017), the court found an employee was not qualified after she exhausted her FMLA leave, plus thirty additional days of unpaid leave, and did not provide sufficient evidence that she could have returned to work had the defendant granted her several months of additional unpaid leave. (Doc. #290, PageID#6123, brief p. 22 and PageID#6106, brief p. 5 n. 7.) In *Murray v. AT&T Mobility*,

LLC 374 Fed. Appx. 667, 672 (7th Cir 2010), the court found an employee was not qualified where she substantially exceeded her FMLA leave balance in addition to accumulating more than 18 points when the defendant had a policy only allowing 12 points annually. (Doc. #290, PageID#6106, brief p. 5, n. 7.) In *Fogle v. Ispat Inland, Inc.*, 32 Fed Appx. 155, 157-58 (7th Cir. 2002), the court found the plaintiff's request to be excused entirely from the defendant's attendance policy due his disability status as a recovering addict was not reasonable especially because according to plaintiff, none of his absences that led to his final discharge were disability related. (Also Doc. #290, PageID#6106, brief p. 5, n 7.)

AutoZone cites to *Smith v. Cook Cty.*, No. 17 C 7609, 2019 WL 1515007 (N.D. Ill. Apr. 8, 2019) to support its argument that attendance is an essential job function, a point that is not in dispute. (Doc. #290, PageID#6107-10, brief pp. 6-9). Like other cases cited by AutoZone, the facts in *Smith* are extreme and utterly dissimilar to the facts in EEOC's case. The plaintiff in *Smith* had been completely off work for approximately 20 months (September 2014 to April 2016) at the time that he asked for an additional accommodation of restricted shifts (*id.* at *2), leave far in excess of any required by the claimants in this case. Moreover, the job at issue in *Smith,* working as a "Youth Development Specialist ('YDS') at the Cook County Juvenile Temporary Detention Center ('JTDC')" is a safety sensitive position. *Id.* at 1. Smith was responsible for overseeing 18 residents and maintaining staffing levels is *constitutionally* mandated. *Id.* The claimants, on the other hand, worked in a retail environment, which had many policies and practices in place to deal with absences. This is not to say that their jobs were not important to AutoZone, but to recognize that different environments allow different levels of flexibility. And AutoZone's company policy *does* allow employees to trade shifts with no penalty under the attendance policies, and it routinely charges no penalty to employees who

leave their shifts early. (DRSUF 50, 54.) The essential job functions in *Smith,* are more like those in other cases cited and distinguished in EEOC's opening brief, *Javonovic* and *Preddie*, where the jobs at issue are particularly sensitive to employees missing work. (Doc. #280, brief p. 30.) *Smith* cannot be a basis for finding that the claimants in this case were not qualified.

Another case cited by Defendants for the proposition that the EEOC claimants are not qualified individuals is *Kazmierski v. Bonafide Safe & Lock, Inc.*, 223 F. Supp. 3d 838 (E.D. Wis. 2016) (Doc. #290, Page ID#6110, brief p. 9). Superficially, *Kazmierski* may appear factually similar to the case at bar. However, even in *Kazmierski*, the plaintiff's absenteeism was more severe, 36 missed days (many of the points accrued by EEOC claimants were for tardiness, at times as little as 16 minutes) interspersed over a two-and-a-half-year period. More importantly, the court noted that plaintiff's work as a locksmith was often performed on an emergency basis, where timely response was of the essence. *Id. at* 850. And unlike AutoZone, which has only made conclusory statements that any of the occurrences of the claimants had a negative impact on business (rather than just annoying the store managers who in some cases had to find coverage for a missed shift), the employer in *Kazmierski* produced evidence of customers cancelling appointments due to the employee-plaintiff's missed work. *Id.* Finally, the accommodation the employee-plaintiff in *Kazmierski* sought was to be allowed 5 unplanned absences every month, effectively 60 unexpected absences per year. By contrast, EEOC has asserted the reasonable accommodation of extending a reasonable number of attendance points to the claimants to compensate for their disability related occurrences. An "accommodation" that Defendants claim is already in complete accord with their attendance policy, and none of the EEOC claimants had unexpected days off five times a month, every month. Interestingly, the

court in *Kazmierski* found that plaintiff's past history of having 5 unexpected absences per year allowed him to continue to perform the essential functions of his job. *Id.* at 847-48.

Employees in occupations dealing with emergency situations are understandably held to high standard in the area of attendance. In *Guzman v. Brown Cty.*, 884 F.3d 633, 636 (7th Cir. 2018), the plaintiff was a telecommunications operator for the county's 911 center. Attendance was so sensitive that on multiple occasions Deputy Sheriffs were dispatched to check on the plaintiff or other operators when they were late for work. *Id.* at 640. None of the EEOC claimants work in safety sensitive positions on which the public relies.

In *Evans v. Coop. Response Ctr., Inc.,* No. CV 18-302 ADM/BRT, 2019 WL 2514717 (D. Minn. June 18, 2019) (Doc. #290, PageID#6108, 6138, brief pp. 7, 37), a decision from a district court in the Eighth Circuit and also cited by Defendants in their attempt to show the EEOC claimants are not qualified, the employer terminated the plaintiff after she exceeded the employer's limit of attendance points, in part because she required leave in excess of that which had been granted her pursuant to her FMLA application. *Id.* at 3. There, the employee-plaintiff was the only administrative assistant in her office and the court noted that many of her duties could not be done remotely or deferred until she was able to attend work. *Id.* at *5. The court found she was not qualified because of what it considered to be her excessive absenteeism. *Id. Evans* is currently on appeal. As with other cases cited by Defendants, *Evans* is distinguishable since the plaintiff in that case exceeded her FMLA leave – none of EEOC's claimants did so – and because she was the only employee in her job title in her job site, making her attendance particularly sensitive. By contrast, the EEOC claimants were largely fungible.

AutoZone also cites *EEOC v. Austral USA, LLC* 447 F. Supp. 3d 1252 (S.D. Ala. 2020) (Doc. #290, PageID#6121, brief p. 20), an out of circuit case involving a diabetic employee who

41

exhausted his FMLA. There, the employee reached the cap on the attendance points policy and required additional time off, which the employer had permitted in the past. The district court rejected this employee's claim. *Austral USA* is neither controlling nor comparable. There, the employee was absent 55 days using intermittent FMLA leave in the year prior to his termination and missed a total of 126 works days that year using a combination of FMLA, ELOA and sick days. *Id.* at 1261. Additionally, due to *uncovered* absences the employee in *Austral USA* had reached 15 attendances occurrences while termination was usually triggered after reaching 8. *Id.* If any of the claimants in this case had given the leave available to employees of *Austral USA,* or simply been afforded the leniency that AutoZone claims is provided by its own attendance points policy, they would not have been fired.

AutoZone attempts to distinguish *Carmona* and *Holly* (Doc. #290, PageID#1606-1607, brief pp. 5-6)*,* on various bases including that EEOC's claimants admitted that attendance was an essential function of their jobs. Again, what is disputed in this case is whether AutoZone's written policy of requiring near perfect attendance was an essential function, not attendance generally. EEOC cites to *Carmona* to support the proposition that an employer cannot rely on its attendance point policy in terminating employees without considering the employee's disability and the employer's ability to provide accommodations. (Doc. #280, brief p. 2.) That principle is sound regardless of whether the employee was relatively new or a veteran, whether the issue is needing relief due to tardiness or due to absences. If they can be accommodated, they should be. That is the point of the ADA. EEOC also cites to *Carmona* for the proposition, consistent with Seventh Circuit precedent, that in determining essential functions, this Court should not look solely to an employment policy but should look at how the policy was actually implemented. (*Id.* at p. 12.) Similarly, EEOC cited *Holly* to support the proposition that the existence of an

attendance policy is not enough to prove that compliance with the policy is essential. This Court should also consider what impact inability to comply had on the company. (*Id.*) And nowhere does AutoZone cite an attendance points case that approved of an employer's refusal to be flexible where there is evidence that the employee's attendance policy required flexibility and evidence that its attendance data also showed it did not routinely enforce its point policy.

Instead, AutoZone cites to *Credeur v. Louisiana*, 860 F. 3d 786 (5th Cir 2017), where the Fifth Circuit evaluated whether a work-from-home accommodation was reasonable for an attorney in the litigation unit for the State of Louisiana. (Doc. #290, PageID#6106, brief p. 5.) There, the plaintiff-employee was an attorney who had been provided work from home for a limited amount of time, and then rejected an alternative accommodation offered by the state. *Credeur* is consistent with Seventh Circuit precedent that states that employees are not free to choose their preferred accommodation but must accept a reasonable accommodation offered by the employer. In the case at bar, however, the claimants were never offered *any* accommodation from strict adherence to the written attendance policy.

Interestingly, the *Credeur* court also noted, "[o]f course, courts should not give blind deference to an employer's judgment, but should instead evaluate the employer's words alongside its policies in practices." *Id.* at 782 F 2d at 765-66 (internal citations omitted). This is precisely the point of Dr. Cromwell's evidence-- to show that in practice, strict adherence to the 12-point policy was not required. Further, as the Sixth Circuit has held, requiring near-perfect attendance is not an essential job function simply because an employer says it is. As the Sixth Circuit noted in *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018), a stringent and inflexible leave policy could have the effect of denying leave for doctors' appointments, dialysis, therapy or anything else that requires time away from work and so would be antithetical to the

purposes of the ADA. The attendance policy at issue in *Hostettler* was not attendance points but a full-time requirement. Yet the principle is the same. If courts gave blind deference to an employer's attendance policy, it could allow employers to negate the regulation that reasonable accommodations include leave.

In any event, despite the claims made by AutoZone regarding the claimants' status as qualified individuals, its attendance policy as articulated in this litigation and the actual practices documented by Dr. Cromwell show the leave and flexibility required by the claimants due to their disabilities does not render them unqualified to work at AutoZone.

### III. Other Issues Do Not Create Jury Question on Whether the Claimants Are Qualified

Attempting to create a factual dispute, AutoZone makes much of a series of other issues:

(i)     whether certain of the claimants were terminated for "job abandonment" rather than pursuant to the attendance points policy,

(ii)    whether store managers were permitted to receive notice of disability and need for flexibility or only Regional Human Resources Managers, and

(iii)   whether allowing the claimants flexibility in attendance would have been an undue hardship.

None of these creates a jury question on whether EEOC's claimants are qualified.

Job Abandonment:  AutoZone, having asserted that  employees would not receive points for absences or tardies due to a documented disability under their attendance policy, tries to escape the implications of this admission (or invention) by claiming that six of the EEOC

44

claimants were not terminated due to the attendance points policy, but due to job abandonment. (DSOF 270, 295, 362, 397, 407 and 471.) However, the claimants all dispute that they abandoned their jobs and assert that they informed AutoZone of their desire to continue working. *See* Dkt. 280 at brief pp. 37-45. This is a contested issue for the jury.

AutoZone distorts reality when it claims that because its RHRMs allegedly believed they were firing certain of the claimants for job abandonment, the claimants are not appropriate participants in this case. At issue is AutoZone's application of an attendance policy to employees with disabilities and its unwillingness in the case of these employees to adhere to its stated policy of excusing absences and tardiness (DSOF 33), and even apparent job abandonment (DSOF 48 and 61), when the cause was the employee's disability.

Furthermore, it is disingenuous to treat termination for "job abandonment" as somehow not being an application of AutoZone's attendance policy. (Doc. #290, PageID#6110, brief p. 9.) AutoZone's own documents show that under the attendance policies, corrective action to be taken for reaching 12 occurrence points within a 12-month period is termination. (Doc. #292-1, PageID#6350.) AutoZone's documents also show that an employee would receive 6 points for a no call / no show. (*Id*. at PageID#6349.) Thus, an employee who was a no call / no show for two days in a row, which is how Defendants define job abandonment (DSOF 38), has by definition accrued at least 12 points and may be terminated. The only difference between an employee who accrues 12 points in increments and one who accrues them all at once is that an employee who is coded as no call / no show for two days in a row does not have to be subjected to progressive discipline. (DSOF 41.) In fact, managers knew that they could avoid progressive discipline by scheduling an employee for when the employee could not work, and then terminating the employee for job abandonment. (PSAF 133.) The same could be said for scheduling employees

to work after they had already been told that they were terminated or need not come back into work.

It is telling that for two of the claimants, Clay and Robbins, AutoZone cannot even say unequivocally that they were terminated for job abandonment – something one would expect defendants to know. AutoZone describes both Clay (DSOF 262) and Robbins (DSOF 471) as being terminated for "repeated attendance policy violations and / or job abandonment…." As AutoZone has effectively admitted, in this case the difference does not matter.

Store Managers Responsibility to Report Reasons for Employee Absences:  AutoZone asserts that the Company did not know for certain of the claimants' disabilities or the reason for certain of their absences because communicating that to their store managers did not result in it being reported up the chain of command. *See, e.g.* DSOF 162, 235, 271, 296, 362, 398, 412, and 471. This too is a notice question --, whether the claimants communicated to AutoZone by informing their store managers (as they testify) or whether they did not (as AutoZone asserts.)

The law in the Seventh Circuit is such that communication to front-line managers has been deemed acceptable in many other cases.  *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (informing the local facility manager of "limitations and needed accommodations was sufficient to put UPS on notice that it was expected to engage in the interactive process"). EEOC believes that a jury will find similar communications sufficient evidence of notice here also.

Undue Hardship:  In a footnote, AutoZone claims a jury must resolve the question of undue hardship.  Arguments made only in a footnote are waived.  *See To-Am Equip. Co. v.*

*Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 663 (7th Cir. 1998) (argument waived because it was "buried in a footnote"); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 636, n. 2 (7th Cir. 2012) (same).

EEOC disagrees that there is anything to resolve. After taking the deposition of seven of EEOC's claimants, AutoZone told this Court it would not be asserting this defense. *See* July 10, 2018, Hearing Transcript at 8:20-9:20 (AutoZone's Counsel: "But at least with respect to the seven claimants that have been deposed from the first two weekends, which those are the ones that have currently been deposed, that's not going to be AutoZone's argument on summary judgment, that we will not be asserting undue hardship.") A couple of months later, without doing any additional discovery related to those seven claimants, AutoZone walked this back. *See* October 11, 2018 Hearing Transcript at 15:13-16:2. However, merely asserting the defense does not win the day. Rather, AutoZone would need to demonstrate "the impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business." *See* 29 CFR 1630.2(p)(2)(v). Yet, AutoZone objected to numerous discovery requests related to this topic including customer complaints, stores sales data, store roster (including job title), and schedule changes. (*See* PSOF 8, *see also* Doc. #244, and Doc. #253.)

Whether AutoZone has preserved an undue hardship affirmative defense or has evidence to support it, however, is a distinct question from whether the undisputed facts show that EEOC's claimants are qualified and can perform the essential function of their job -- including meeting AutoZone's actual attendance standard, with or without a reasonable accommodation. The Seventh Circuit Pattern Jury Instructions recognize these are distinct questions. *Compare* Seventh Circuit Pattern Jury Instructions, No. 4.03 (lays out the "elements of the plaintiff's

claim" and makes no reference to undue hardship), 4.05 (defines qualified, with no reference to undue hardship), 4.06 (explains reasonable accommodation and differentiates it from undue hardship), *with* 4.09 (defines the undue hardship affirmative defense).

Nowhere in its opening brief to this court did AutoZone make any argument regarding undue hardship, and AutoZone certainly did not move for summary judgment on it.  *See* Docket No. X. If this Court grants EEOC's motion that the claimants are qualified, the parties can resolve via motions in limine and jury instructions whether there is any evidence on the issue of undue hardship to be presented to the jury.


## IV.    CONCLUSION

In this case, the Court is presented with an employer that offered flexibility in attendance to many employees and that claims to accommodate the attendance needs of disabled employees, and yet cannot direct the Court to any record of ever having done so. Such accommodation should be more than a paper policy. It should be AutoZone's actual practice. Because the EEOC's claimants were not afforded the flexibility that EEOC's ADA guidance requires, and AutoZone's claims its policies provide, and for all of the reasons stated above and in EEOC's motion for partial summary judgment, this Honorable Court should enter an order finding that EEOC's claimants were qualified individuals with disabilities and set this case for trial on the issues of notice, undue burden and damages as well as the individual failure to accommodate claims of Clay and Gomez and Gomez's retaliation claim.


October 23, 2020
Respectfully Submitted,

48

<u>/s Ethan Cohen</u>
Ethan Cohen
Supervisory Trial Attorney

<u>/s Deborah Hamilton</u>
Deborah Hamilton
Supervisory Trial Attorney

<u>/s Kelly Bunch</u>
Kelly Bunch
Trial Attorney

<u>/s Miles Shultz</u>
Miles Shultz
Trial Attorney

U.S. Equal Employment
  Opportunity Commission
230 S. Dearborn, Suite 2920
Chicago, IL 60604

ATTORNEYS FOR PLAINTIFF